## ANDERSON v. BUTLER.

1. Findings of fact by the Circuit Judge in a chancery case from evidence heard by him in open court, affirmed.
2. A trustee cannot be a purchaser at his own sale, but the court will not, at the instance of the *cestui que trust*, set aside a purchase by a trustee of the trust property at a sale ordered by the court and conducted by its officers, where the trustee was largely interested individually, purchased in good faith, and paid a full price.
3. Testatrix devised a tract of land in certain proportions to be divided between A, B, C, and D, and empowered A, her executor, to sell the whole or any part of this land in such way and on such terms as he may deem best to carry out the provisions of the will. By a first codicil, testatrix revoked the devise to D, and directed the land to be divided share and share alike between A, B, and C, in all other particulars ratifying her will. By a second codicil, testatrix revoked the devises to C under her will and first codicil, and directed the land to

be divided share and share alike between A and B, in all other particulars ratifying her will and first codicil. *Held*, in action by B against A to restrain a sale by him that the codicils did not revoke the power of sale given by the will, and that the Circuit Court erred in ordering a sale of this land to be made by the master, and in taking it away from A, the executor, without his consent.

4. Accounting between the parties for rents and profits and timber cut respectively from lands in which both parties had an interest, was properly ordered.

5. Costs in equity are within the discretion of the Circuit Judge.

Before FRASER, J., Aiken, October, 1888.

This was an action by Mary Ann Anderson and her children against A. P. Butler, executor of Seth Butler and of Catherine M. Butler, for account, injunction, and relief. The opinion states the case, the will and codicils of Mrs. Butler, therein referred to, being as follows:

WILL. In the name of God, Amen. I, Catherine M. Butler, wife of Seth Butler, residing in what was formerly the County of Edgefield, but now the County of Aiken, in said State, being in feeble health of body, but of sound and disposing mind and memory, do make, publish, and declare this my last will and testament.

First, I will and desire that all my just debts, if anything should be due by me at my decease, be paid by my executor hereinafter named.

And whereas, under a trust deed executed by my husband, Seth Butler, to Silas Lanier, bearing date the 7th day of April, A. D. 1849, I became *inter alia* entitled in fee simple to a tract of land in said deed described as containing eight hundred and seventy-two acres, and then adjoining lands Dr. W. W. Geiger, Edmond Morris, and others, situated in what was then known as Edgefield District, in the said State of South Carolina. Now, be it known that I do hereby give, devise, and dispose of the said tract of land as follows, that is to say: I give and devise one-twelfth part of the said tract of land to my granddaughter, Anna K. Shaw, wife of H. W. Shaw, in fee simple for her own use and benefit, and I hereby direct that the remainder of the said tract of land, equal to eleven-twelfths thereof, be divided into three equal parts or portions, and I hereby give and devise one of the said three shares to my son, A. Pickens Butler, and one other third part to my daughter, Lucinda Lanham, wife of William Lanham, for and during her natural life in remainder to

her children, the issue of any predeceased child to take the share·
which his or her or their parent would have been entitled to take
if living at the termination of said life estate, and the remaining
third part of the eleven twelfths aforesaid of the said tract of land
I give and devise to my daughter, Mary Ann Anderson, wife of
William Anderson, during her natural life, with remainder to her
children, the issue of any predeceased child to take the share
which his, her, or their parent would have been entitled to take
if living at the termination of said life estate.

And lastly. I do hereby constitute and appoint my son, A.
Pickens Butler, hereinbefore named, the executor of this my last
will and testament, with full power and authority to sell the
whole or any part of the tract of land hereinbefore devised and
disposed of, in such way and on such terms as he may deem best
to carry out the directions and provisions of this my last will and
testament.

FIRST CODICIL. Whereas I, Catherine M. Butler, have by
my last will and testament, in writing duly executed and bearing
date the 23rd February, 1876, and duly ratified on the 16th day
of March, 1876, given and devised unto my granddaughter,
Anna K. Shaw, the wife of H. W. Shaw, in fee simple the one-
twelfth part of my plantation, more particularly described in said
will to which reference is made.

Now, I, the said Catherine M. Butler, widow of Seth Butler,
being desirous of altering my said will in respect of said devise
hereinabove referred to, do make this present writing, which I
order and direct to be annexed as a codicil to my said will and
taken as part thereof, and I do hereby revoke the said devise
in said will, as hereinbefore recited, to my said granddaughter,
Anna K. Shaw, and do hereby direct and devise that the said
one-twelfth part of said plantation be divided among my children,
A. Pickens Butler, Lucinda Lanham, and Mary Ann Anderson,
share and share alike,· subject to the limitations set forth in my
will as to the shares of my daughters, it being my will and desire
that my plantation shall be divided share and share alike between
my son, A. Pickens Butler, and Lucinda Lanham and Mary Ann
Anderson, my daughters, the said daughters to hold their shares
respectively for and during their natural lives, then to their chil-
dren, to be divided between them equally; and I do hereby rat-
ify and confirm my said will in every particular, except where
the same is hereby revoked and altered as aforesaid.

SECOND CODICIL. Whereas I, Catherine M. Butler, have, by
my last will and testament in writing, duly executed and bearing

date the 22nd February, 1876, and duly ratified on the 16th day
of March, 1876, given and devised unto my daughter, Lucinda
Lanham, the wife of William Lanham, for and during her nat-
ural life, with remainder to her children, the one third part of
eleven-twelfths of all that plantation or tract of land, containing
eight hundred and seventy-two acres, and more particularly de-
scribed in my said will, and whereas by a codicil to my said will,
dated the 13th January, 1880, I had given and devised unto my
daughter, Lucinda Lanham, aforesaid, the one-third part of the
one-twelfth part of the aforesaid tract of land, which in my said
will had been given to and devised to my granddaughter, Anna
K. Shaw, which devise was revoked by said codicil. Now, know
all men that I, Catherine M. Butler, being desirous of altering
my said will and said first codicil in respect of said devises here-
inabove referred to, do make this present writing, which I order
and direct to be annexed as a second codicil to my said will and to
be taken as a part thereof, and I do hereby revoke the said de-
vises in said will and said first codicil, as hereinbefore recited, to
my said daughter and Lucinda Lanham, and I do hereby direct
and devise that the said one-third part of the one-twelfth of said
tract of land, and the said one-third of the eleven-twelfths of the
said tract of land be divided between my children, A. Pickens But-
ler and my daughter, Mary Ann Anderson, share and share alike,
subject to the limitations set forth in my will as to the share of my
daughter, Mary Anderson, it being my will and desire that my
said plantation shall be divided, share and share alike, between my
son, A. Pickens Butler, and my daughter, Mary Ann Anderson,
the said daughter to hold her share for and during her natural
life, then to her children, to be divided between them equally.

And I do hereby ratify and confirm my said will and said first
codicil in every particular, except when the same is hereby re-
voked and altered as aforesaid.

*Mr. W. T. Gary*, for appellant.

The power of sale in Mrs. Butler's will was given only to carry
out the directions of the will, and when those directions were
changed and the land ordered to be divided between her two chil-
dren, the power was gone. 1 *Jarm. Wills*, 343; 18 *S. C.*, 102.
If he had the power, it was only to carry out the will, and there-
fore he could not sell until he had shown that there could not be
partition—division. *Hill Trust.*, 494; 3 *Mad.*, 491. And the
Court of Equity can restrain the exercise of the power. 2 *Perry
Trusts*, 28, 508; *Hill Trust.*, 67; 8 *Ves.*, 570; 8 *Barr*, 417;

2 *Metc.*, 243; 1 *Rich. Eq.*, 324; 11 *Id.*, 156; 18 *S. C.*, 193; 1 *McCord Ch.*, 383; 9 *Rich. Eq.*, 226.

The executor cannot hold his purchase of the Welborn tract without accounting for its value. *Gen. Stat.*, §§ 1974, 1975. In equity, a trustee cannot purchase at all at his own sale. *Hill Trust.*, *535; 16 *S. C.*, 385; 9 *Rich. Eq.*, 242; 7 *S. C.*, 185; 1 *DeSaus.*, 289; 1 *McCord Ch.*, 383; 1 *Hill Ch.*, 353; 1 *S. C.*, 184.

*Messrs. Henderson Bros.*, for defendant.

July 1, 1889.    The opinion of the court was delivered by

MR. CHIEF JUSTICE SIMPSON.    Seth Butler, late of Aiken County, died in 1876; he left a will with codicils, in which he disposed of his estate, consisting almost entirely of two tracts of land, one known as the Welborn tract, in certain proportions to his children, to wit, Anna K. Shaw, Lucinda Lanham, Mary Ann Anderson and her children (the plaintiffs), and to the defendant, A. Pickens Butler, who was appointed executor and also trustee of his sisters, Mrs. Lanham and Mrs. Anderson. The estate of the testator being somewhat involved in debt, the executor, A. P. Butler, instituted proceedings in the Probate Court, with all necessary parties, to sell the lands to pay debts and for partition, which resulted in an order of sale at public outcry, at which sale the said executor, A. P. Butler, became the purchaser of the Welborn tract at the price of $1,100, receiving a deed from the probate judge. The other tract was bought at the same sale by one John A. Butler. About this last tract, however, there is no contest, and it may be dismissed without further remark.

Mrs. Catherine M. Butler, the widow of the above mentioned Seth Butler, died in 1880, possessed of a certain tract of land containing some 872 acres, known as the "Red House tract," and some household furniture. She also left a will with several codicils thereto attached. Under this will and codicils the plaintiffs, Mrs. Anderson and her children, and the defendant, A. P. Butler, were the devisees, to wit: one-half to A. P. Butler and the other half to Mrs. Anderson and her children, as will be seen

from said will, a copy of which will be found in the "Case," and reported herewith. The defendant, A. P. Butler, was appointed executor, with full power and authority to sell the whole or any part of the tract of land devised, to wit, the Red House tract, in such way and upon such terms as to him might seem best to carry out the directions and provisions of the will.

The executor, A. P. Butler, has been in possession of the Red House place since the death of his mother, and Mrs. Anderson. has been in possession of the Welborn tract mentioned above, with some negotiations going on for an exchange of the Welborn place to Mrs. Anderson for her interest in the Red House place. These negotiations, however, having failed, in October, 1884, A. P. Butler advertised the Red House place for sale, by virtue of the power which he supposed he had under the will of his mother, for cash; whereupon the suit below was commenced, praying an injunction restraining the said A. P. Butler from selling the said land, and that it be partitioned by metes and bounds; also for an accounting by said A. P. Butler as executor of both the wills mentioned above, and as trustee of the said Mrs. Anderson, and also for vacating the sale of the Welborn place to the said A. P. Butler at the Probate Court sale, *supra*, and for the partition of the same, the said sale being alleged as beyond the jurisdiction of the Probate Court; or in any event that the said A. P. Butler be required to account for the same at its true value, it having been alleged in the complaint that it was bought by the said A. P. Butler at an under price, in consequence of the bidding being chilled by the said A. P. Butler, &c. There was also certain stock in the Georgia Railroad involved in the controversy originally, but this has been settled between the parties, and therefore needs no further mention here. A temporary injunction was obtained, restraining the sale of the Red House place, and finally the case came up for hearing before his honor, T. B. Fraser, who pronounced the following decree, from which both parties appealed upon exceptions attached:

JUDGE FRASER'S DECREE.

"This case was heard by me at the term of the court held in September and October, 1888. It was heard on the pleadings

and testimony taken in open court, and on argument of counsel. I have given to this unfortunate case mature consideration, and I think it better to announce my conclusions without entering into the reasons for them.

"I am satisfied that it is at the option of the *cestui que trust* to abide by or set aside a purchase made by the trustee. While, therefore, I am satisfied that the purchase was made by the trustee of the Welborn place, in good faith and at the highest price it would bring, and even in competition with parties interested, there must be a resale of the interest of Mrs. Anderson, the *cestui que trust* for life (who alone contests the sale), and of those in remainder after her death as to her share, if it will bring more than it sold for at the sale under the judgment of the probate judge. The power of sale given to the executor and trustee under the will of Mrs. Butler is one of those *administrative* powers which is in some sense discretionary, but is at the same time a power coupled with a trust and within the control of the court. *Perry Trusts,* sec. 508. *Greer* v. *McBeth* (12 Rich. Eq., 254), does not apply, as the power was more than a mere power of sale. There is nothing in the testimony before me which I think would render proper an interference by the court with the exercise of the power of sale of the Red House place, except that there would be complications attending a sale made by the trustee, in a case where he is entitled to one-half of the proceeds of sale and the *cestuis que trust* are entitled to the other half, if he should desire to become a purchaser at the sale.

"I have carefully considered the testimony as to the expediency of making a partition in kind of the Red House place. There can be no question that a surveyor can cut into two or more parcels, but I am satisfied that this cannot be done without injury to some one or other of the parties interested.

"I am satisfied that Mrs. Anderson is entitled to a transfer to herself of the seventeen shares of the capital stock of the Georgia Railroad and Banking Company, there being no remainders after her death, and no restrictions on the trust as to the manner of its use, they being held by the trustee simply *as trustee for her.* *Lewin on Trusts,* 598. It may be desirable to wind up

this trust so far as the present trustee is concerned, and therefore an accounting will be ordered.

"It is therefore ordered and adjudged, that the master of Aiken County, after due advertisement, do sell at the usual place on salesday in March next, or on some subsequent salesday, the interest of the trust estate of Mrs. Mary Ann Anderson in the said Welborn tract. being one-third of eleventh-twelfths thereof, at a price not less than one third of eleven-twelfths of eleven hundred dollars, to the highest bidder. for cash, and in the event there shall not be so much bid therefor, the master shall withdraw the same from sale, and the said A. P. Butler shall have leave to apply to the court for an order confirming his title thereto under the sale heretofore made. It is also ordered and adjudged, that the said master, after due advertisement, do sell at the usual place of sale on salesday in March next, or on some subsequent salesday, the Red House place for one-half cash, and the balance on a credit of one year, with interest from the day of sale, the credit portion to be secured by a bond of the purchaser and a mortgage of the premises. It is ordered, that at the above ordered sales either Mrs. Anderson or the trustee and executor, A. Pickens Butler, or any other party to this action, have leave to become a purchaser.

"It is further ordered, that A. Pickens Butler do account before the master for his actings and doings as executor of the last will and testament of Seth Butler, and as executor of the last will and testament of Mrs. Catherine M. Butler, and as trustee for Mrs. Mary Ann Anderson, under the said wills of Seth Butler and Catherine M. Butler. In said accounting the master is directed to take an account of the value of the use and occupation and timber and wood cut from the Welborn place, by or by the direction of Mrs. Mary A. Anderson since the purchase of the same by A. Pickens Butler, at the sale under the decree of the Probate Court referred to in the proceedings. The master will also take an account of the use and occupation of the Red House place by A. Pickens Butler since he took charge of the same as executor, and of any improvements made by him on said Red House place, the question as to his right to be refunded the amount

therein reserved until the coming in of the report showing the character and value of such improvements.

"I do not find in this case sufficient facts to warrant the court in charging the trustee and executor with the costs of this proceeding; and it is difficult to separate the cost attending the litigation about the Welborn place from those attending the question as to the sale or partition of the Red House place, as most of the witnesses were examined in reference to both places. It is therefore ordered, that one-third of the costs up to date be paid out of the interest of the trust estate in the Welborn place and the remaining two-thirds paid out of the proceeds of the sale of the Red House place—this order to include all costs up to this date and the costs and expenses of the sales made under this order. All questions raised by the pleadings and not herein passed upon, and all questions as to costs not herein provided for, are reserved for the future order of the court. Parties may apply at the foot of this decree for any orders necessary to carrying out the same.

"It is further ordered, that on or before the 15th of February next, the said A. Pickens Butler, trustee, do transfer in writing in proper form to Mrs. Mary A. Anderson the said seventeen (17) shares of the capital stock of the Georgia Railroad and Banking Company, to be held by her in her own right and for her own use.                    T. B. FRASER,

"7th January, 1888.                    Presiding Judge."

"Defendant's Exceptions. Please to take notice that the defendant, A. Pickens Butler, as executor and in his own right, excepts to the decree of his honor, Judge Fraser, dated the 7th January, 1888, and will appeal therefrom to the Supreme Court of this State and ask a reversal thereof on the following grounds :

"1. Because, it is submitted, that his honor erred in ordering a resale of the Welborn place in any event, and especially as he found that said A. Pickens Butler had purchased it 'in good faith and at the highest price it would bring.'

"2. Because, it is submitted, he erred in ordering the Red House place to be sold by the master, whereas he should have permitted the executor to sell the same under the plain powers given him by the testatrix, Mrs. Catherine M. Butler.

"3. Because, it is submitted, that he erred in ordering any accounting by this defendant as trustee or executor, and instead thereof should have dismissed the complaint.

"4. Because, it is submitted, that he erred in ordering this defendant to transfer to Mrs. Anderson the Georgia Railroad stock in plain violation of the terms of the trust."

"PLAINTIFFS' EXCEPTIONS. Please take notice that the plaintiffs in the above stated case except to the decree of his honor, Judge Fraser, dated 7 January, A. D. 1888, and will appeal therefrom to the Supreme Court of this State, and ask for a reversal and modification thereof upon the following grounds :

"1. Because, it is submitted, that his honor erred in finding that a power of sale is given to the executor and trustee under the will and codicils of Mrs. Catherine Butler.

"2. Because, it is submitted, his honor erred in deciding that there is nothing in the testimony which would render proper an interference by the court with the exercise of the power of sale by the executor, except the complication stated.

"3. Because, it is submitted, his honor erred in deciding that the Red House place could not be divided in kind without injury to some one or other of the parties interested.

"4. Because, it is submitted, his honor erred in considering and deciding the question of fact as to whether partition in kind could be made of the Red House tract, both counsel for the plaintiffs and defendants in open court at the hearing having agreed to submit to the court the construction of the will and codicils of Mrs. Catherine Butler, the court to decide whether a power of sale was thereby giving to the executor and trustee, and whether the court under the evidence had authority to make partition of said lands—the court to decide the legal issues and to refer the question of fact as to whether partition could be made in kind to the master or commissioners that further evidence might be submitted.

"5. Because his honor erred, it is submitted, in directing the master to take account of the value of the use and occupation and timber and wood cut from the Welborn place by or by the direction of Mrs. Mary Ann Anderson, since the purchase of the same

by A. Pickens Butler at the sale under the decree of the Probate Court, and in not requiring an accounting to be taken of the timber and wood cut or sold by, or by the authority of, said A. Pickens Butler from the Red House tract.

"6. Because, it is submitted, his honor erred in finding that the purchase of the Welborn tract was made 'by the trustee in good faith and at the highest price it would bring,' and also in charging the interest of the plaintiffs in said trust estate with the payment of any part of the costs of the case, and in not finding from the evidence that the trustee and executor was properly chargeable with the costs of the proceedings."

The original scrip of the stock of the Georgia Railroad and Banking Company, mentioned in Judge Fraser's decree, stood in the name of Seth Butler.   He, in his life-time, transferred it to "A. P. Butler, trustee for Mary Ann Anderson," and the present scrip stands in that way.

Without taking up these exceptions separately, and considering them in their order, we think it sufficient to state the questions involved when they are read as a whole.   These seem to us to be as follows: 1st.  Did his honor err in finding as a matter of fact, that the defendant, A. P. Butler, purchased the Welborn place in good faith, and at the highest price it would bring? 2nd.  Did he err in setting aside this sale, and in ordering a second sale of the interest of Mrs. Anderson?   3rd.  Did he err in ordering a sale of the Red House place by the master, or should he have allowed the executor to sell under the power claimed by him under the will of his mother? or should he have referred the question of partition in kind to the master or to commissioners? 4th.  Did he err in directing an accounting by the defendant, Butler, as executor and trustee, or should he have dismissed the complaint?  5th.  If the accounting should take place, should defendant, Butler, be required to account for timber cut from the Red House place, Mrs. Anderson having been ordered to account for the use, occupation, and timber cut from the Welborn place? And 6th.  Did he err as to the matter of the costs?

The first question is a question of fact, and we have carefully examined the testimony reported, under the established rule applicable to appeals on the facts, and while we find some conflict,

yet there is abundant evidence to sustain the finding of his honor, that the defendant bought the Welborn place in good faith and at its market value. It is our duty, therefore, to regard that finding as one of the facts of the case.

As to the second question above. It is a well established principle, that a trustee cannot buy at his own sale. He cannot be vendor and vendee at the same time of trust property; that is, he cannot make a binding contract with himself in the purchase of the trust property under his control. On the contrary, all such purchases are subject to be vacated and set aside by the *cestui que trust* at his option, and this, too, without regard to the fact, whether said purchase was made in good faith, at full price, or was fraudulent and delusive. This doctrine has been long settled, both in England and in this country, and it is a wise and wholesome principle. It strikes at once at the root of danger, and destroys it. It removes from the trustee the temptation to · do wrong, and guarantees the faithful execution of his trust in the sale of the property of his *cestui que trust*. See *Fox* v. *Mackreth*, found in Leading Cases in Equity, Law Library, vol. 35, 3rd series, and the numerous cases there cited; *Ex parte Wiggins*, 1 Hill Ch., 353; *Hill on Trustees*, 538; *Ex parte Lacey*, 6 Ves., 626; 1 *Story Equity*, §§ 322, 323.

But while this doctrine obtains, and will be uniformly enforced when the trustee is both vendor and vendee, as said above, yet we fail to see its applicability to all judicial sales, where a trustee may happen to become the purchaser of the property sold. We see no reason why, in every such sale, the rigid doctrine above should be applied, and that a trustee should be precluded from purchasing the same as if he was the vendor. In sales ordered by the court of trust property, and conducted by the officers of the court, there is no necessary conflict of interest in the mind of the trustee, like that which would exist when he is both vendor and vendee. On the contrary, sometimes he himself might have an individual interest in the property, which would make it his duty to become the purchaser to prevent sacrifice. Nor have we found any decided case which has carried the doctrine to the extent of invalidating all such purchases by trustees at such sales, at the option of the *cestui que trust*, as held by the Circuit Judge

below.   His honor cites no authority;   nor has the counsel of appellant, plaintiff, sustained this position by his citations.

The strongest case in our reports for appellant, plaintiff, is *Ex parte Wiggins* (1 Hill Ch., 353), in which Chancellor Harper delivered the opinion.   In that case, the doctrine of inhibition, when the trustee was both vendor and vendee, was clearly presented and announced, and it was applied to the facts of that case, inasmuch as the sale, though ordered by the court and made by the commissioner, was yet under the superintendence of the assignees of the property sold, who were directed to join in the conveyance to the purchaser.   One of the assignees became a purchaser, and the court holding that the sale was substantially a sale by the assignees, and that the purchaser was one of the vendors, of course applied the doctrine above, and gave the creditors a right of resale if they so desired.   These facts are not present, however, in the case at bar.   The case of *McCelvey* v. *Thomson* (7 S. C., 185) is also relied upon.   There the sale was made by the commissioner under an order of the court, and one of the solicitors became the purchaser, who very soon thereafter transferred an interest in his purchase to the commissioner himself, these two immediately reselling the property at considerable profit.   The court held, .upon the testimony, that these parties were agents of McCelvey, and should be required to account to him for the profit made.   Such is not the case at bar.

It is said, however, that there is still another principle of equity, far-reaching in its consequences, which should control here, to wit:  that no party should be permitted to purchase an interest even at a judicial sale, where he has a duty to perform that is inconsistent with the character of purchaser, and *McCelvey* v. *Thomson, supra*, and the cases there cited, are referred to.   This is, doubtless, a sound and a wise principle, but its application must depend upon the facts of each particular case; and in looking into the facts here, we fail to see, in the purchase by the defendant of the Welborn place at the sale by the Probate Court, any inconsistency with his relation as executor of his father's estate, or as trustee of the plaintiff, Mrs. Anderson.   The sale was in open market.   He had considerable interest in the property as one of the devisees.   There was no chilling, no combi-

nation or conspiracy, and, as found by the Circuit Judge, he gave the highest price it would bring.

The case of *Huger* v. *Huger*, 9 Rich. Eq., 217, is also cited. In that case the executors bought a large amount of the property at their own sale, and the main and principal .question on appeal was as to the validity of this purchase, which was contested by some of the parties in interest, on the ground, in part, of the doctrine announced above, to wit, that trustees could not buy at their own sales; could not be both vendors and vendees. The sale, however, was confirmed, not in violation of said doctrine above, but by virtue of the act of assembly, then the act of 1839, which expressly authorized executors and administrators to become purchasers at their own sales. The court further held, that although the bond which that act required to be given in such cases, to account for the true value of the property, had not been given, yet that this did not invalidate the sale; and the court being satisfied in that case that the purchasers had given the full value, there was no necessity to refer that question back for further investigation. And still further, it held, that, by the purchase, the title to the property had passed to the executors, and that it was not an open question to whom it then belonged, and the sale was confirmed.

Our conclusion is, that his honor was in error in applying the principle here, that it is at the option of a *cestui que trust* to abide by, or to set aside, the purchase by a trustee of property bought at his own sale, the facts of this case not being subject to that principle, because, in our judgment, the evidence fails to show the relation of vendor and vendee on the part of the defendant. But even conceding that this sale was substantially a sale by the executor, as in *Ex parte Wiggins*, *supra*, in view of the fact that he instituted the proceedings in the Probate Court for said sale to pay debts and partition, then, under section 1974, General Statutes, embodying the provisions of the act of 1839, we think he had the right to purchase, and it appearing, as found by the Circuit Judge, that he bought in good faith, and at the highest price, said purchase should have been confirmed, as in *Huger* v. *Huger*, *supra*.

Next, as to the Red House place. This was a tract of land

owned by Mrs. Catherine M. Butler, and directed by her will to be divided in certain proportions among her children, the defendant, A. P. Butler, being appointed executor, and in the last paragraph of her will she gave her executor full power and authority to sell the whole or any part of the said tract in such way and on such terms as he might deem best to carry out the directions and provisions of her will. To this will she attached two codicils, altering the disposition made of said land, and finally, in the last codicil, after referring to the fact that she had devised certain interests in said land to her daughter, Mrs. Lanham, and to her granddaughter, Anna K. Shaw, she revoked these, and directed, in substance, that said land be divided equally, share and share alike, between her children, A. P. Butler and the plaintiff, Mary Ann Anderson, the share of Mrs. Anderson to be for life, then to her children. Now, the questions are, whether the power to sell, found, as stated above, in the body of the will, was revoked by the codicils, and if not, whether the Circuit Judge erred in restraining the executor in exercising this power, and in ordering a sale by the master.

There is no reference made in the codicils to the power in question, and the only express revocation is as to the interests which she had devised to the parties other than Mrs. Anderson and to the defendant, A. P. Butler. The rule as to the construction of wills and codicils, is as stated in defendant's, appellant's, argument, to wit: "Not to disturb the dispositions of the will further than is absolutely necessary for the purpose of giving effect to the codicils." 1 *Jarm.*, p. 343. Now, it could hardly be denied, that had Mrs. Butler left her will as first executed, without the codicils, that the executor would have had full power to sell, to carry into effect the provisions and dispositions made in said will. The power conferred is full, ample, and unlimited, the only limitation being that it should be exercised to carry into effect the foregoing provisions. The codicils, as we have said, refer only to the previous devises to her other then intended beneficiaries, which she revokes in terms. True, in the last codicil she directs that the tract of land shall be divided, share and share alike, between her daughter and son, A. P. Butler; but there can be no significance given to the word *divide* used in this

connection in the codicil, because in the body of the will, when she intended that her other children should have an interest in the land, she used the same term, *divide*, and yet, in the conclusion, she gave her executor the ample power of sale referred to. She must have intended originally to leave the whole matter of the division to the sole discretion of her executor, mode and manner and everything connected therewith; and we cannot see that there is any inconsistency in the terms of the codicil, with the continued existence of the power of sale as conferred in the will. There is certainly no express revocation of this power, nor any necessary implication of such revocation, as far as we can see. Nor does the Circuit Judge hold that this power was revoked.

Now, this power having been conferred, and the testatrix having the undoubted right to confer it, and it not being revoked, it is the law of the case, and must control, unless suspended or vacated by the courts for some reason authorizing the court thus to suspend or to vacate. Doubtless an executor may be removed from his office, and his powers revoked by the courts, for subsequent insolvency, incompetency, or fraudulent conduct in reference to the management of the estate; but in the absence of these and of all similar causes, we know of no authority in the courts to take from the executor the powers and duties conferred upon him by the testator. *American Bible Society* v. *Noble*, 11 Rich. Eq., 156. As we have said, every one has the right to make his own will and to appoint his own agents for carrying it into effect, and when not against the law of the land, it would be an usurpation of power and a dangerous infringement of a sacred right for the courts to change, or in any way modify, the wishes and purposes of a testator, as solemnly expressed in his last will and testament. The Circuit Judge seemed to have recognized the rights of the executor, but thought it was proper that the master should make the sale, so as to save the matter from complication, in the event that said executor might desire to become the purchaser. We do not think this was a sufficient legal reason for revoking the executor's powers, especially as he protested against it.

Inasmuch as, in our opinion, the power of sale given in the will remained intact after the execution of the codicils, and inas-

much as we think the discretion is with the executor as to the manner of the division of the land, to wit, whether it shall be by partition in kind or by sale, we do not regard the question made and argued as to the question of partition by metes and bounds as before us for adjudication. , If that was before us, we would incline to a reference to commissioners to make the partition as the best and fairest mode of settling this controversy, and as the one most likely to give satisfaction to all parties, and we venture to express the hope that that mode may be ultimately adopted; but we do not see that we have any power in the premises. We therefore make no adjudication in reference thereto.

We see no reason why the accounting ordered below should not proceed, nor why both parties should not account for timber cut from the respective places mentioned.

The question as to the jurisdiction of the Probate Court was not pressed in the argument on either side, and we have only to say, in reference to it, that it furnishes no foundation for the appeal. The matter of the costs was for the Circuit Judge, and his decree in that respect is not disturbed.

It is the judgment of this court, that the judgment of the Circuit Court be reversed, except as to the accounting ordered and the matter of the costs, which are affirmed. Let the case be remanded for such further proceedings as to the parties may be advisable, in accordance with the principles herein.