19287

A. B. FLOWERS, et al., Appellants, v. OAKDALE REALTY AND WATER CORPORATION, et al., Respondents

(183 S. E. (2d) 513)

---

*John P. Gardner, Esq.,* of Darlington, *for Appellants*

*Messrs. Wright, Scott, Blackwell & Powers, Dusenbury & Dusenbury* and *Willcox, Hardee, Houck, Palmer & O'Farrell*, Florence, *for Respondents,*

September 10, 1971.

*Per Curiam:*

The complaint in this action by the children of Theo Young Flowers, against her remote grantees, to recover real property claimed by them as remaindermen under the Will of S. W. Gee, alleges only the ultimate facts as to the mortgaging of the property and the devolution of title, as substantially set forth in the forepart of the circuit decree, reported herewith, and concludes therefrom that by purchasing the property at the foreclosure sale their mother satisfied the court-authorized mortgage, "but in no way acquired an interest in said real estate superior to her former life estate." Therefore, upon her death on June 1, 1958, title to the property vested in plaintiffs as remaindermen under the Will.

We are satisfied that the circuit decree correctly concluded that Mrs. Flowers acquired valid title to the property through the foreclosure sale, to the exclusion of plaintiffs' interest in remainder. This portion of the order, through Question III, will be reported as the opinion of this court. Having reached this conclusion, it is unnecessary for us to decide whether the circuit court erred in sustaining the affirmative defenses relied upon by defendants.

Affirmed.

## DECREE OF CIRCUIT COURT

### FACTS

This is an action in trespass to try title. The common source of title was in S. W. Gee who died testate on March

18, 1925. Prior to his death, he had endorsed a note and this note was reduced to judgment by the holder, The Commercial & Savings Bank, Inc., (Judgment Roll No. 7324). The bank then threatened to have the property sold in aid of assets and a loan was authorized giving the property as security (Judgment Roll No. 7461) and the proceeds of this loan were used to pay off the judgment obtained against S. W. Gee (Mortgage Book 51, page 196). When this note was not paid, another suit was instituted and another loan was authorized (Judgment Roll No. 8025). When this note was not paid the mortgage was foreclosed (Judgment Roll No. 9466) and the property was sold at public auction. Theo Young Flowers, the *cestui que trustent* under the Will of S. W. Gee and the mother of the remaindermen, bought the property in and a deed dated October 6, 1930, was made to her by the Special Referee and recorded in the records of Florence County in Deed Book 9 at page 298 on November 26, 1930. She retained possession of this property until December 1, 1936, when she sold it to Thomas H. McAlpine. Theo Young Flowers died intestate on June 1, 1958, leaving as her only heirs, the plaintiffs. A. B. Flowers, the youngest of the children, was born on July 26, 1916 (see affidavit, page 74), Nancy Flowers Schuyler was born on November 7, 1912 (see affidavit, page 76), Samuel Walter Flowers was born on October 16, 1911 (see affidavit, page 72). When the property was foreclosed and sold on October 6, 1930, the defendants were respectively (within a few days), nineteen (19) years of age, eighteen (18) years of age, and fourteen (14) years of age. When Theo Young Flowers died on June 1, 1958, they were, respectively, forty-six (46) years of age, forty-five (45) years of age, and forty-one (41) years of age. The youngest, A. B. Flowers, became twenty-one (21) years of age on July 26, 1937.

From the findings of facts and the pleadings I have reached the following conclusions of law:

I. *Can a person, being a cesti qui trustent in property, buy said property at a legal foreclosure sale and thereby divest the remaindermen of their interest in said property?*

The Will of S. W. Gee under Item III devised the property in question as one hundred fifty-four (154) acres to A. B. Flowers:

*"To have and to hold in trust nevertheless* for the sole use, benefit and behoof of my cousin, Mrs. Theo Young Flowers, for and during the term of her natural life; and the said A. B. Flowers shall have the control and management of said place for and during the term of the life of Mrs. Theo Young Flowers with the specific understanding that the said Mrs. Theo Young Flowers shall have the right to possess the said premises at all times and receive the net benefits and proceeds arising and accruing therefrom."

After the death of the *cestui que trustent,* the Will provided that the premises shall immediately vest in the legitimate children of the *cestui que trustent* who are the plaintiffs.

In discussing this question, the plaintiffs consistently refer to Theo Young Flowers as the life tenant. This is not merely a matter of semantics, for it is important to realize that Theo Young Flowers under the terms of the Will, was not a life tenant, but was the beneficiary of a testamentary trust. Her children were entitled to the property only upon the termination of the trust which ran for her lifetime, unless sooner terminated.

Under this Will, A. B. Flowers, as Trustee, was vested with the fee, control and management of, and right of possession to manage and to handle subject to the right of Mrs. Flowers to live on said premises at all times and the net proceeds to go to Mrs. Flowers. No other interpretation of Will is alleged in the Complaint and in fact these terms are set out verbatim. Having the control and management of the property, A. B. Flowers held an active trust (and

the only rights Mrs. Theo Young Flowers had in the property were the rights to possess it for her life (to live on it)). A. B. Flowers was to farm and manage it. The children of Mrs. Flowers had a remainder interest in said property after her death but, under the Will, she held no fiduciary relationship to the remaindermen, such relationship being in the trustee alone who was A. B. Flowers. A. B. Flowers did hold a fiduciary position as to Theo Young Flowers, the beneficiary, since he had active control and management of the property and all of the proceeds of the farm went through him. It was his duty and responsibility to apply all of the net proceeds to the taxes, upkeep, management and debts of the estate and the balance was to be paid to Mrs. Flowers who was entitled to the benefits and proceeds only after the above obligations had been satisfied. The exact relationship and interest of Theo Young Flowers in this property is important not only to establish her relationship to the remaindermen which, as above set out, shows that she had no fiduciary responsibility to them under the Will, but also affects the date on which the statute of limitations began to run.

The law of Trusts has been an important part of the English Civil Law and it has its origin in the legal fictions used by the clergy to evade the Statutes of Mortmain (89 C. J. S. Trusts § 8, page 719). The system of uses was expanded and applied for various diverse purposes which resulted in many inconveniences, evils and abuses. This in turn resulted in our modern day statute of uses. The statute executes a passive trust but when the trust is active, as in the instant case, the statute of uses is not applied. The *cestui que trust* (and/or trustent) is commonly referred to as the beneficiary which was the position of Theo Young Flowers in the instant case. As the beneficiary (for her life), she had no responsibility to the remaindermen with the possible exception of waste and, therefore, when she purchased the property at the foreclosure sale, having no fiduciary relationship to the remaindermen under the Will it was a good and valid purchase as no fraud or conspiracy is alleged.

The theory that a life tenant can not allow property to be sold for taxes and then buy the property at the tax sale thereby divesting the remaindermen of their interest is based on the idea that the life tenant receives the income from the property during his life and therefore, out of this income, it is his responsibility to pay the taxes. In the North Carolina case of *Miller v. Marriner,* 187 N. C. 449, 121 S. E. 770 (1924), the widower, who held a life estate by way of courtesy, bought the property in at a foreclosure sale of a mortgage placed on the property by his deceased wife. He later left the property by will to his widow and her children. Suit was instituted by children of his first wife and the Court quoting Chief Justice Ruffin in *Jones v. Sherrard,* 22 N. C. 179, 187, stated:

"In the first place, it is to be observed that the terre-tenant of land, liable to incumbrance, must take care that such incumbrance does not accumulate to the injury of those who are to come after him. But then, in doing this he is not bound to give anything for the relief of the land but what is derived from the land. Therefore, one who is liable in respect of the occupation of land cannot be called on for more than the rents or actual annual value of the premises during this time. To that extent, it is clear a tenant for life must keep down the interest on incumbrances (italics ours), and the reversioner may file a bill to make the rents amenable, and a receiver will be put upon the tenant for that purpose."

2. Story, Equity, Jurisprudence § 658 (14th Ed.), in part, is as follows:

"Duty of Life Tenant to Pay Interest on Mortgage Debt. In regard to the interest due upon mortgages and other incumbrances the question often arises, By whom and in what manner it is to be paid? And here the general rule is that a tenant for life of an equity of redemption is bound to keep down and pay the interest, although he is under no obligation to pay off the principal."

The Miller Court (*supra*) stated at page 774 of 121 S. E.:

"It seems to be settled that ordinarily a life tenant must pay the taxes and the interest on a mortgage indebtedness, to the extent, at least, of the income which he receives from the property; but he is not bound to pay the principal of the mortgage. Being bound to pay the taxes and interest, he cannot acquire a tax title or good title based on his failing to pay taxes or interest. He is a trustee to this extent."

In the instant case, Theo Young Flowers had no duty nor responsibility to pay the taxes nor the mortgage under the Will of S. W. Gee as that was the responsibility of the trustee, A. B. Flowers. It is noted that every case and each authority quoted by counsel for the plaintiff in his brief deals with the purchase of property by a life tenant and holder of the legal title. In such cases there is good reason to hold that such life tenant can not acquire a title adverse to the remaindermen, since he is under a duty to preserve the property for the remaindermen. As is noted by the Court in *Edward v. Puckett,* 196 Tenn. 560, 268 S. W. (2d) 582 and cited by the plaintiff, every owner of a life estate is a *quasi-trustee* for the remaindermen. In the instant case, however, Theo Young Flowers did not own a life estate. The legal title to the life estate was in A. B. Flowers who was not merely a *quasi-trustee* but was rather a trustee in fact. It was A. B. Flowers and not Theo Young Flowers who owed the remaindermen the duty to preserve their estate. Since Theo Young Flowers was a mere beneficiary of the Gee Trust and had no fiduciary duties under it, she had no duty to perform that was inconsistent with the character of purchase at a judicially ordered and approved sale. It is true that she signed the note but this was a matter between Mrs. Flowers and the mortgagee as she was not required to do so in the Decree of the Court dated February 5, 1929 (Judgment Roll No. 8025). She was ordered:"—to join with the Master in Equity for Florence County in the execution of a *mortgage* of the land—."

The Court's Order required only that Mrs. Flowers sign the mortgage in order to subject her life interest to the mortgage. The transaction would have been perfectly valid and binding even if Mrs. Flowers had never signed the note itself, however, her endorsement as co-maker was necessary to persuade the mortgagee to make the loan. This did not impose on her any greater responsibility with regard to the plaintiffs but as previously stated, was merely a requirement of the mortgagee and not the Court.

II. *Can a person having a life estate in property buy said property at a legal foreclosure sale and thereby divest the remaindermen of their interest in said property?*

The rationale on which some jurisdictions question sales in which the life tenant purchased property and thereby divested the remaindermen of their interest is that the life tenant has an income from the property and it would be inequitable for him or her to enjoy that income without paying for the upkeep of the property. Even in these jurisdictions, however, the Courts do not hold a judicial sale, in which a person having a fiduciary trust becomes the highest bidder and buys the property in, is automatically void but merely that it is, under some conditions, voidable.

In *Anderson v. Butler,* 31 S. C. 183, 9 S. E. 797 (1899), Seth Butler, under his will, left one portion of a tract of land to his daughter, Mary Ann Anderson, in trust and the remainder to her children. One of the testator's other children, namely, a son, A. Pickens Butler, was named *executor and trustee*. The estate was heavily involved in debt, and the executor and trustee instituted proceedings in the probate court to sell the tracts to pay debts and for partition. At the sale, A. Pickens Butler, the executor and trustee, purchased the entire tract. In a suit instituted by Mary Ann Anderson and her children, the remaindermen, the Trial Court held that although the purchase was made by the trustee in good faith, the law was that at the option of the *cestui que trust,* the sale would be set aside and ordered the

tract to be resold. The Supreme Court reversed the lower Court's decision, saying:

"(We) fail to see in the purchase by the defendant of the Welborn place at the sale by the probate court any inconsistency with his relation as executor of his father's estate, or as trustee of the plaintiff Mrs. Anderson. The sale was in open market * * *. There was no chilling, no combination or conspiracy * * *"

It further stated:

"(We) fail to see its applicability to all judicial sales, where a trustee may happen to become the purchaser of the property sold. We see no reason why, in every such sale, the rigid doctrine above should be applied. * * *. In sales ordered by the court of trust property, and conducted by the officers of the court, there is no necessary conflict of interest in the mind of the trustee in every such sale, like that which would exist when he is both vendor and vendee. * * * Nor have we found any decided case which has carried the doctrine to the extent of invalidating all such purchases by trustees at such sales. * * *"

The similarity between the *Anderson* case and the instant case is quite apparent, except that the purchaser in this case is not the trustee, but the *cestui que* trust, and, as such did not have the responsibility or duty that the trustee had. In both cases, the holders of the remainder interest were the plaintiffs (plus Mrs. Anderson in that case), and the *Anderson* case is authority for the position that in South Carolina such a purchase at a judicial sale, lacking some chilling of the bid, fraud or conspiracy, is not invalid. This was an 1899 decision and has been quoted with approval many times since that date.

There is no fraud, collusion, chilling of or insufficient bid alleged in the instant case. In fact Counsel for plaintiff admits in his brief,—"the foreclosure proceeding was proper and had a third person, not in any way connected with Theo Young Flowers or her husband, purchased the property at the sale that person would have obtained a good title."

Counsel for the plaintiff in his brief leans heavily on the laws of our sister State of North Carolina cites two cases. An analysis of these cases shows that in the case of *Creech v. Wilder,* 212 N. C. 162, 193 S. E. 281 (1937), the widow was the administratrix of the estate and in her final return stated that all debts of the estate had been paid with the exception of the mortgage on the real estate and that she assumed the payment of this land debt. The mortgage was later foreclosed and the widow bid the property in. The court held that it was the *duty* of the administrator to pay all debts of the estate and that the estate could not be closed before all such debts were paid and, therefore, she continued as administrator of the estate and held a position of trust in relation to the heirs of the intestate. Having *assumed* the responsibility of paying this mortgage on the property, this was her responsibility and, therefore, she could not allow the property to be sold and then buy it in at the sale, thereby, divesting the remaindermen of their interest in the property. She not only was a life tenant but had assumed the mortgage and was under the obligation to pay it.

The case of *Morehead v. Harris,* 262 N. C. 330, 137 S. E. (2d) 174 (1964), also cited by plaintiffs Counsel, likewise stated:

*"If an administrator purchases at his own sale, the sale is not absolutely void, but is voidable at the suit of the heir or heirs irrespective of actual fraud.* * * * If property is sold at a judicial sale made pursuant to an action to foreclose a mortgage, in which action all interested persons are parties, the fiduciary may purchase with leave of court and obtain a good title if full value is paid and the transaction is free of fraud."

The case of *Honeywell v. Dominick,* 223 S. C. 365, 76 S. E. (2d) 59 (1953), recognized and approved a sale to the trustee of property in the estate going so far as to bind the remaindermen, both infant and adult, in being and unborn.

III. *Can a parent buy property at a judicial sale and thereby divest his or her children of their remainder interest in said property?*

Section 31-51 of the 1962 S. C. Code, cited by plaintiffs, was passed by our legislature in 1923. The main thrust of the act was to establish the rights and powers between the respective parents of the same children, as is shown by the fact that such parents were named as joint natural guardians. Parents have always been natural guardians and that is nothing new.

The facts of this case and the applicable law are not changed merely because the beneficiary of the Gee Trust was the mother of the children who were to take the property upon her death. If the judicial sale was properly ordered by the Court, with all parties being within the jurisdiction and represented, and if the beneficiary or *cestui que trust* had the right to purchase at said sale, the right would not be adversely affected by the circumstance that she was also the mother of the ultimate takers under the S. W. Gee Will.

Although courts jealously scrutinize transactions involving the rights of guardian and ward and the rights of parent and child, where the property interests of such persons under disability are involved, it is important to remember that the original court-authorized loan, for which a lien was placed on this property, was made to pay a judgment against the estate of the settlor, S. W. Gee, and that the refinancing was done as much for the benefit of the children of Theo Young Flowers as for herself. The Court notes the fact that there was a nationwide depression in 1930, and that the proceeds of the financing which ultimately led to the foreclosure, worked for the benefit of those same parties who are now seeking to attack the foreclosure sale.

The case of *Scurry v. Edwards,* 232 S. C. 53, 100 S. E. (2d) 812 (1957), cited by plaintiffs, has no application to the present case, although it is set out as *obiter dicta* therein

that a guardian has no authority to sell real estate of his ward without an order of Court, and that the Courts subject a guardian's purchase of his ward's property to a rigid examination. The primary issue there dealt with the part performance of a patrol contract to convey real estate and its effect to take the contract out of reach of the Statute of Frauds. In the instant case, the sale was held pursuant to a proper Order of Court, was open and above-board, and there is no charge of fraud or conspiracy. Thus, even under the general rule, as set out in the *Scurry* case, the sale was valid, and a rigid scrutiny may be made of the transaction without vitiating it.

Plaintiffs lay great stress on the duties inherent in the relationships of parent and child and guardian and ward. I find no disagreement with the general principles, but fail to see how the application of any of them void the sale here, even at the instance of the plaintiffs, who themselves were the minors involved. The loan was properly made under Court authority; no charge is made that either Mr. or Mrs. Flowers was guilty of fraud, collusion or other wrongdoing; the minors were represented and their interests protected by the Court; the sale was held pursuant to proper court decree; it was not conducted by Mr. or Mrs. Flowers, but by an officer of the Court; in the foreclosure, the minors were again represented; Mrs. Flowers, neither as parent or *cestui que trust,* had any power over the sale; there is no charge that the bidding was chilled, or the price other than reasonable.

If Mrs. Flowers occupied a fiduciary relationship with her children, the situation is covered by the following from *Steinbeck v. Bon Homme Mining Co.,* 8 Cir, 152 F. 333.

"There is an exception to the general rule that one who occupies a fiduciary relation may not lawfully purchase the property of his correlate for his own benefit, *as well established as the rule itself.* It is that an agent or trustee may lawfully buy the property of his principal or *cestui que trust*

at a judicial sale caused by a third party, which he has no part in procuring, and over which he can exercise no control." (Emphasis added.)

*See* 77 A. L. R. 1525, and *Swineford v. Virginia Trust Company,* 154 Va. 751, 152 S. E. 350 (1930).

The case of *Williams v. Bruton,* 121 S. C. 30, 113 S. E. 319 (1922), relates to the rights of tenants in common, and has no relevance to the issues in the instant case.