Rupfin, Chief Justice,
 

 after having stated the case as above, proceeded as follows : The principal questions discussed in this case are, whether the money to be paid to the owner of a dividend of inferior value, upon partition, is the personal debt of the owner of the more valuable dividend, or is an encumbrance fixed on the land, and on the land alone ? And if the latter, whether the land is yet primarily liable, notwithstanding the events subsequent to the partition ?
 

 The opinion delivered as that of the majority of the Court in the case of
 
 Wynne
 
 v.
 
 Tunstall,
 
 1 Dev. Eq. R. 23— however indistinct as to the precise grounds on which the decree was to be based — is explicit as to the meaning of the act of 1787, 1 Rev. Stat. ch. 85, sec. 1, upon the first of the foregoing points. The Court held the charge directed by the act to be “ a legal charge upon the land,” which rendered a knowledge of its existence by a purchaser immaterial ; and also that by such a charge “ the land was not a security only for the money, but was itself the debtor.” It is true, the decision was not unanimous; and Judge Henderson dissented without giving his reasons. It is nearly certain, however, that he differed not on this point, but on others ; on which the opinion must be admitted to be unsatisfactory, and the decree, in some respects, unquestionably erroneous. Besides the inquiry, whether the land was the debtor for the money charged, there were the other questions: first, whether the money charged was realty or personalty, as between the husband and wife, and as between them and the owner of the land, from which the money was to be raised: and secondly, whether Tunstall was a purchaser without notice; and whether, as such, he would
 
 *182
 
 be protected. Now it cannot be denied that the proposition there contended for on behalf of the defendant, has great forCQ jn ¡t, namely, that an actual conversion of realty into money by judicial sale or sentence is, legally and equitably, a conversion out and out into personalty, unless there be a provision by statute, or a reservation by the decree or judgment, to the contrary. Many reasons are readily conceivable, why the legislature should not impart to small sums of money in this situation, the character of land ; and there is no plain intent to do so expressed in the act. Judge Henderson’s difficulty may have been on this head. But, besides, the decree proceeds upon a declaration in it that Tunstall had notice, after the opinion had declined entering into that inquiry, upon the ground that it was immaterial. Above all, after holding the money to be land, and to be charged- on the land as the debtor, the decree gives authority to the plaintiffs, at their election, to raise the money from the land or from the defendant and his sureties personally; and further directs it to be raised immediately and settled for the benefit of the wife, although Tunstall had the undoubted right toWynne’s interest as tenant by the courtesy, or at least during the lives, of himself and his wife. It is thus obvious, that Judge Henderson might not have concurred in that opinion for other reasons than a doubt, whether a dividend of the land was the debtor for the money charged on it for equality. His own opinion in
 
 Gregory
 
 v.
 
 Hooker,
 
 1 Hawkes, 394, shows that he entertained no such doubt; for he there held — whether rightly or not, is not a subject of consideration now — -that without any statute, money payable, upon a division of slaves, out of one share to equalize the division, was secured upon the property. However open to observation, therefore,
 
 Wynne
 
 v.
 
 Tunstall
 
 may be in other respects, its authority cannot, we think, be denied on the question now under discussion, on which it uses the unequivocal language before quoted.
 

 But without that guide, the language of the act of 1787, the provisions of other acts
 
 in pari materia,
 
 and the natural equity and reasonableness of the thing lead us to the conclusion, that the money is a legal and adhering charge on the lands, and constitutes a deb f of the realty exclusively.
 

 
 *183
 
 The commissioners are empowered to
 
 charge
 
 the more valuable
 
 dividend
 
 with such sum as may be necessary to render the division equal; to be returned, with a description of the different parcels of land, lots or houses. Those words
 
 per se
 
 seem sufficient to make the land the debtor. It is to be remembered, that the debt is one of legal creation and regulation, entirely independent of any contract of the parties. Ordinarily such a debt is that of the realty and not of the terre-tenant personally. An instance is the descent of mortgaged premises to the heir, who enters into no covenant. Another is a judgment against the ancestor or statute merchant acknowledged ; on which the land is subjected by
 
 scieri facias
 
 tot he heir and terre-tenant, on which there can be no judgment against those parties personally, but only for execution against the land descended from the debtor. In reference to the case before us, there is a plain propriety and equity, that a part owner of the land, who does not get a full share ofit, but is compelled by law to take money in lieu of the deficit of land, should have the most permanent security of the realty, and that security an absolute one. The personal responsibility of the party, to whom the land is allotted, could not be deemed adequate ; especially, when we advert to the circircumstance that the payment is deferred for a year, and that in that time the land might be disposed of, and the person out of the jurisdiction. Nor, should what is called an equitable lien be much more efficient, as a purchase without notice would free the estate from it. There seem therefore sufficient reasons, why the legislature should have meant to bind the land conclusively; and we are satisfied that in that sense is to be understood the charge on the land given by the act.
 

 This construction is confirmed by the subsequent and supplemental acts. That of 1801, Rev. ch. 588, (see 1 Rev. Stat. c. 85, sec. 34,) is, in its preamble, demonstrative that, as then understood in the legislature, the sum charged was not the personal debt of the infant, nor payable by his guardian out of any other property of the infant, but only out of the profits of the land. To avoid the necessity of a sale of the land itself, which would often arise from that state of the law, the act enlarges the time for payment until the infant’s
 
 *184
 
 full age ; and in the mean time authorizes and requires the guardian to make payment out of any assets of his ward, Up0n pain in case of neglect, of answering the interest out of the guardian’s own pocket.
 

 It is a general principle where a sum of dueinre-speoí of there is no th" terre-°f that "the land alone is ia e.
 

 The act of 1831, 1 Rev. Stat. ch. 85, sec. 12, 13, 14, for partition of lands in this and other States, also uses the language of the act of 1787, that money may be-charged on the more valuable dividend to be paid to the tenant in sever-alty of one less valuable; and then adds in express terms, “ and the sum Lshall be a charge
 
 on the land
 
 into whose hands soever it may come, although it may be taken without notice.” The same principle is thus seen to run throughout the statutes ; which fix the debt on the land, and subject it to sale under
 
 venditioni exponas
 
 against one who was party to the partition, or against his alienee if made a party by
 
 scieri facias,
 
 as in the other cases before alluded to.
 

 It nearly follows from holding the land a debtor, that it is the sole debtor. It is a general principle, where a sum of money is due in respect of land, and there is no contract of the terre-tenant, that the land alone is liable. Some exam- . pies have been already given. A rent charge granted for equality of partition is another. Co. Lit. 169. 1 Thomas c0]ie 522, note. Of the same character seems to be the encumbrance created by our statutes. There is no stipulation by the party to "make the debt his own. While the one may justty claim the land for his debtor as being generally the best security, the other may with equal justice require former to be confined to the land and not to charge him personally for the money exacted by law, for land imposed on him without his consent. The act provides affirmatively that the land shall be liable. It is silent as to any judgment against the person except as to the costs. If a personal liability had been intended, a clear provision to that end would not have been omitted. Asa security for the money, a personal responsibility, instead of the liability of the land, is inadequate ; and in addition to the liability of the land could not- be necessary or right. A whole dividend must be supposed a sufficient security for a sum of money assessed on it, to reduce it to an equality with the other dividend. In cases in which it could be otherwise, the party entitled to
 
 *185
 
 the money ought to bear the loss. The land can never prove a deficient security unless from the act of God, an unforeseen accident, or fall of prices. In such cases it is hard enough upon the one party to have his own share of the land taken for the satisfaction of the sum assessed on it for a co-tenant, without being called on to make good a deficiency, the effect of an earthquake, a fire, or of national pecuniary distress. By buying the land for the money charged on it, the one party may get the whole share of the two in the realty. It is against reason and conscience to go beyond that, and endeavor to take also the other estate of the person to whom it was once supposed the more valuable dividend had been assigned ; but which, in the event, proves to be in fact the less valuable.
 

 Besides, the interests in estates held in common are not necessarily present interests; but there may, as to a particular share, be a life estate in one, with a remainder or reversion in fee in another. In such a case how could the personal judgment be rendered — for what proportions and when payable ?
 

 The case of husband and wife now before us, must also have been within the contemplation of the legislature, who could not have overlooked the danger to her and the injustice to him of charging them personally by judgment in partition for this money as for a debt of the wife. The wife’s inheritance is her separate estate ; and in respect to it, she and her husband are to many purposes regarded, even at law, as distinct persons. Lord Camden, indeed, uses the strong language, that in a Court of Equity, in respect of money raised on the wife’s land for the husband, they are looked upon as divorced
 
 pro hac vice.
 
 So it must upon principle also be
 
 quoad
 
 money paid by the husband in respect of burdens thrown by the law on the land of his wife, without his concurrence. It is very right, that each should be chargeable with the proportions which, upon settled principles, they respectively, as the terre-tenants, from time to time ought to pay in respect to the value of their several interests. But it would be contrary equally to legal analogies and natural justice to make the husband, by compulsion, the purchaser of inheritances for his wife and her heirs. On the
 
 *186
 
 other hand, there is a policy in relieving the husband by holding the land liable before him, and so subject to reimburse to him, money advanced upon an encumbrance on it; as otherwise, it must be expected he would suffer the wife’s land to be sold in every case for owelty of partition. It is true that he may so act, though the' land be the primary fund, by refusing to make an advance of íhé money. But there will be less, and indeed, little danger of tha.t, if it be the husband’s privilege, after answering the encumbrance, to keep it on foot for reimbursement at his death, either by the surviving wife or her heirs. It is, therefore, the true interest of the wife and of her heirs, as well as of the husband, that the debt should charge the land primarily.
 

 The opinion of the Court also is, that the land continues to be the primary debtor, at least for the principal money and future interest. The giving of the note did not exonerate the land. If Radford, instead of his wife, had been the owner, giving a note merely would not have that effect; for the note is looked on as collateral security only, and the makers as sureties for the land.
 
 Matheson
 
 v.
 
 Hardwicke, 2
 
 Pr. Wms. 665, note.
 
 Basset
 
 v.
 
 Percival, 1
 
 Cox, C. C. 268.
 
 Billinghurst
 
 v.
 
 Walker, 2
 
 Bro. C. C. 604. It is much more clearly so, when the husband gives his note for the debt of his wife’s land; for it is difficult to suppose he intended to take the debt on himself as a gift to his wife and her heirs. The
 
 onus
 
 is therefore on those who allege the intention to give, and a plain indication of such intention ought to be very clearly shown. Although in such cases the creditor may proceed at law against the husband, yet the latter will be relieved in equity by having the money raised out of the land, to discharge the judgment at law, or to reimburse the husband if he has already advanced the money.
 
 Baggot
 
 v.
 
 Oughton, 1 Pr.
 
 Wms. 347.
 
 Kinnoul
 
 v.
 
 Money,
 
 3 Bro. C. C. 206; better reported in 3 Swans, 202.
 
 Pitt
 
 v.
 
 Pitt,
 
 1 Turn. 183
 
 .
 

 It is not suggested by either party that the inheritance here is not of value sufficient to satisfy the whole money charged on it; and of course it is good for all that the note of the husband covers. In this particular case too, the admission of the answer is, that neither party intended to dis
 
 *187
 
 charge the land: the heirs of the wife contending only, that they have a right to raise the money on the note, as a subsisting collateral security, although the charge on the land be merged by reason that the land has come in part, to those who aré entitled to the charge. This would be true, if the two securities were independent of each other; for the loss of one security could not impair the other. But here the one is dependent upon the other. The land is the principal debtor, and the husband its surety ; and if the creditor cannot raise the money, or if it be vain for him to raise the money from the principal, then the surety is discharged also. Here, it would be idle to enforce the note, since out of the land the heirs would be compelled immediately to restore the money. They can, therefore, only use the note as a security for such sum as their estate in the land would not be bound for to Radford, for which he ought personally to answer; and to that extent the note must be upheld, as a valid and independent security.
 

 The
 
 teire-
 
 kndjiable ?°encum' must take such en-¿“es'not°e injury of ^to
 
 who
 
 in doing j^'t’ bound the relief than factual’ annual the premi
 
 *188
 
 ses during his time.
 

 
 *187
 
 What, then, is the extent of Radford’s personal liability in this case ? In the first place it is to be observed, that the terre-tenant of-land, liable to encumbrance, must take care that such encumbrance does not accumulate to the injury of those who are to come after him. But then, in doing this, he is not bound to give any thing for the relief of the land but what is derived from the land. Therefore, one, who is liable in respect of the occupation of land, cannot be called on for more than the rents or actual annual value of the premises during his time. To that-extent, it is clear, a tenant for life must keep down the interest on encumbrances, and the reversioner may file a bill to make the rents amenable, and a receiver will be put upon the tenant for that purpose.
 
 Penrhyn
 
 v.
 
 Hughes,
 
 5 Ves. 106. A dowress, for example, redeeming a mortgage, must allow the heir one third of the interest; and a tenant by the courtesy must pay the whole interest.
 
 Banks
 
 v.
 
 Sutton, 2
 
 Pr. Wms. 716.
 
 Monksford
 
 v.
 
 Bunbury, 2
 
 Bro. C. C. 128, Belts, ed.
 
 Corbett v. Barker,
 
 3 Anstr. 759. But the arrear of interest which accrued during the life of the wife, is not chargeable to the husband as a distinct item of interest after her death. During the coverture, the husband is not in of any estate of his
 
 *188
 
 own; but he and she are in as of the estate of the wife, the tenant in fee. Now, the owner of the fee may let the interest run ¡n arrear at pleasure, and the whole will remain a charge on the estate ; against which the heir has no equity to be relieved. Hence, the husband of a mortgager in fee js not obliged to keep down the interest during their joint lives. How then is that arrear of interest to be disposed *■ of ? It was held by the house of Lords in
 
 Ruscombe
 
 v.
 
 Hare,
 
 6 How. P. C. 21, upon the opinion of Lord Eldon, that such arrear interest must, upon the death of the wife, be turned into principal, so as to make the original principal and that interest together, the capital, on which the husband as tenant by the courtesy must keep down the interest. There indeed, to be no other mode of dealing with arrear of interest, although it violates the general rule that interest not be paid on interest.
 

 A tenant by tho courtesy the wliole during'his life, but the interest* crued1 dur-is not ’ to distinct81 item of in-here°death! During the coverture, the husband is not in Of any his own^ but he and asof'the1 tiiffwifi the tenant in fee; and the owner may u?6 the interest run in anear at ancUhe’ ■whole will charge on against*116’ which the heir has no equity to -
 

 There must, therefore, be an inquiry as to the sums due for principal and interest at the death of Mrs. Radford ; and Hadford and the plaintiff declared liable for the interest s¡nce accrued thereon; provided the annual profits of the
 
 3
 
 r , r land be found equal thereto, as to which there must also be an inquiry.
 

 Cf course Radford and the plaintiff will be liable for future interest up to the death of the former, unless they will surrender the life estate — in which casé the other parties must settle the matter between themselves ; or unless some 0f the parties require the proportion of the principal money , r . ? - f .... , , • to be ascertained, for which the life estate and the reversion w°uld be respectively liable, if the whole debt were to be actually raised. The creditor may insist on calling in the , ,
 
 J
 
 ,, . . , . debt; and generally, either the tenant for life or the remam-der-man may be unwilling to have the encumbrance kept out-standing ; and in either case, the party has, ordinarily, a right to a sale to raise the money. In case of a sale of the whole estate, what remains, after discharging that part 0f qle emcumbrance for which the land was liable, would . . ■ be invested, and the interest paid to the tenant for life. But as the charge and a part of the reversion have here come to the same hands, it would be unreasonable to sell the land out and out. The encumbrance, so far as respects the
 
 *189
 
 plaintiff and Radford, is already discharged to the extent to which the reversion is liable ; and between the heirs themselves, being all defendants, the Court cannot decree in this suit. The encumbrance is, therefore, substantially subsisting so far only as the life estate is liable, or the plaintiff and Radford responsible in respect of the life estate. On those parties or that estate ought therefore to be assessed a due proportion of the debt.
 

 The pro-life estate pay'ofa* onTandUP" ™ja®r*orm" garded aa the a-rule has been disal-it is now fertecUo16" jbe_ master what pro-thToapital [^e'ought to pay, re-haAcTthf ™j,eoua"tfiof interest, value of ^tuhe ’ age. mate and tabits ' principle of |*sanRul-
 

 Formerly, that was rated at one third, and the reversion in fee at two thirds, as a proper average by way of general rule.
 
 Ballet
 
 v.
 
 Spranger,
 
 Pr. Ch. 62.
 
 Verney
 
 v.
 
 Verney,
 
 1 Ves. 428, Amb. 88. But the payment of a gross sum or any arbitrary proportion must be unjust in many cases; and therefore that rule has more recently been disallowed. It is now usually referred to the master to inquire, what proportion of the capital the life estate ought to pay, regard being had to the rate and amount of interest, the annual value of the land, and the age, state of health and habits of the tenant for life, estimated upon the principle of life annuities,
 
 Penrhyn
 
 v.
 
 Hughes,
 
 5 Ves. 106.
 
 Allen
 
 v.
 
 Backhouse,
 
 2 Ves. and Bea. 70.
 
 Neimeewicz
 
 v.
 
 Gahn,
 
 3 Paige’s Rep. 652.
 

 There must accordingly be a reference of that kind here, unless the parties should make arrangements that may render the inquiry unnecessary. Such an arrangement is deemed probable, since.,neither party has made any specific motion on this part of the case; and the heirs of Mrs. Radford ought to be willing to accept a surrender of the life estate and give up future interest, as they say the annual value is greater than the interest, while the other parties ought to be willing to make such surrender, as they say the interest exceeds the income. But after the opinions here declared, should there still be no arrangement between the parties then, for the gum that may be ascertained as the just proportion of the life estate, that estate must be sold. If it bring less than the sum, the creditors must of course lose the difference; the highest bid is the best criterion of value, and they can look only to the land for the principal money. If it bring more, the surplus will go to the indemnity of the plaintiff, as mortgagee, for his liability or payment of interest hereto
 
 *190
 
 fore accrued ; and any thing over will belong to Radford, as tenant for life and mortgagor. This is not a case for costs to either party, up to this point in it.
 

 Per Curiam. Decree accordingly.