FRANK J. BOEVINK, APPELLEE, V. CATHARINE CHRISTIAANSE
ET AL., APPELLANTS.

FILED JUNE 3, 1903.   No. 12,857.

1. **Subrogation:** LIMITATION OF ACTION.  Where the circumstances of
the advancement of money to pay a prior mortgage are such as
to entitle the loaner to a subrogation, and are such as to give
him no legal right aside from such subrogation, the statute of
limitations does not run against his claim for such subrogation
and the enforcement of the prior mortgage until ten years from
the latter's maturity.

2. ———: NECESSARY PARTY.  While ordinarily the original creditor
is a necessary party to any suit for subrogation to his rights,
where he has satisfied his claim by a formal instrument, duly
recorded, and sufficient for that purpose, he is not a necessary
party.

3. ———: MORTGAGE BY EXECUTRIX.  One who has advanced money to
pay a valid mortgage against the property of a decedent, at the
request of his executrix, and upon the county judge's assurance
that she was authorized to execute a mortgage for that purpose,
and has taken her note and mortgage upon the same property, is,
upon its subsequently appearing that she had no authority and
that the mortgage given by her is void, entitled to subrogation
to the rights of the original mortgagee to the extent that his
money has gone to discharge that mortgage.

APPEAL from the district court for Lancaster county:
LINCOLN FROST, DISTRICT JUDGE.  *Affirmed.*

*George A. Adams,* for appellants.

*Lorenzo W. Billingsley, Robert J. Greene* and *Richard
H. Hagelin,* contra.

HASTINGS, C.

This is a suit in equity brought by plaintiff and ap-
pellee to establish his right to be subrogated to the owner-
ship of a mortgage executed February 5, 1887, by Abraham
Christiaanse to the Connecticut Mutual Life Insurance
Company upon 80 acres of land in Lancaster county.
The original mortgage was for $700.  Before its maturity
the mortgagor died.  At its maturity application was

made to plaintiff for a loan with which to pay off the amount remaining due, $500. The executrix and plaintiff applied to the county judge for instructions in the matter, and were told by him and by attorney Philpott that she had been authorized to renew the mortgage. Plaintiff advanced the $500. The widow executed to him a note and mortgage, dated May 12, 1892, payable in five years with seven per cent. annual interest. By some mistake it was drawn for $525, and $25 was indorsed upon it the day of its date, leaving the amount $500. The note and mortgage were signed by the widow, as executrix, and purported to be made by such authority. The widow kept the interest paid until some time in 1895. Afterward default was made in the payments of interest and this action was instituted.

The petition alleges that the 80 acres of land covered by the insurance company's mortgage was the homestead of the mortgagor and of his widow, and was worth less than $2,000 in excess of the incumbrances against it. The petition sets out the making of the note and mortgage by the widow, as executrix, and the obtaining of money upon it from plaintiff; that the loan was made in good faith and under the supposition of both parties that the executrix was authorized to make it.

Demurrer was filed to the petition on the ground that it did not furnish facts sufficient to constitute a cause of action, and that the cause of action sued on did not accrue within four years before the commencement of the suit. Leave was taken by plaintiff to amend his petition by interlineation, with leave to defendants to plead by the following Monday. At that time a motion was filed to require the plaintiff to separately state and number the causes of action, and a demurrer to the petition, also, on the ground that it did not state facts sufficient to constitute a cause of action; that there was defect of parties defendant, in that the administrator and the executrix, the person alleged to have executed the mortgage, and the insurance company, the original mortgagee, were not

named parties defendant. The motion and demurrer were
severally overruled. Subsequently, permission seems to
have been obtained to renew the demurrer, and it was
again overruled. The defendants excepted.

Catharine Christiaanse answered, setting up a life inter-
est in this land by a devise from the mortgagor. She
denied the execution of plaintiff's note and mortgage by
the executrix and denied each allegation of the petition;
alleged that plaintiff's cause of action did not accrue
within four years, within five years nor within ten years
of the commencement of the action; alleged that no au-
thority was ever given executrix to mortgage the land;
that the cause of action did not accrue against the de-
fendant alone but jointly with the personal representative
of the mortgagor, his executrix, or her successor; that
there was a defect of parties defendant; that the mort-
gagor's estate, the mortgagor's executrix, the person ex-
ecuting the plaintiff's mortgage, and the Connecticut
Mutual Life Insurance Company, were not made parties;
that no attempt was made by plaintiff from May 12, 1892,
when he advanced the money, until November 5, 1900, to
obtain subrogation to the mortgagee's right in the Con-
necticut Mutual Life Insurance Company's mortgage;
that no attempt has been made to collect the money from
the mortgagor's estate though it was amply sufficient to
meet the claim; that the estate had been distributed dur-
ing the eight years plaintiff had failed to assert his rights
and that such rights had been waived, and asked judgment
for costs. The other defendants answered alleging their
descent from the mortgagor and claiming title in fee to
the lands. Their answers, in other respects, are sub-
stantially in the same terms as the executrix's. Plaintiff
replied by a general denial.

The court at the trial found, that Abraham Christiaanse
died seized of the 80 acres of land, and owed the Con-
necticut Mutual Life Insurance Company $500 on a mort-
gage covering it, and that defendants were related to
him as alleged in plaintiff's petition; that his personal

property was all consumed in the payment of liabilities other than the mortgage; that at the time of his death, the land was not worth $2,000 above the mortgage; that his wife was appointed and qualified as executrix; that, when the mortgage came due in 1892, there was nothing on hand with which to pay except the land; that she, to prevent foreclosure, borrowed from plaintiff $500 which were paid on the mortgage; that plaintiff furnished this money under the advice and direction of the county judge of Lancaster county and J. E. Philpott, attorney, with the express understanding and agreement that he was to have a lien upon the land, and that the land would be charged with the repayment of the money and interest; that he furnished the money to the executrix to prevent sale of the land and save her possession of it, relying upon the statements of the county judge, of the executrix and of Philpott, that he was safe in so doing, and that the mortgage of the executrix to him was valid and authorized; that no order of the county court of Lancaster county was ever made authorizing the executrix to borrow money or execute a mortgage; that the executrix ever since obtaining the money had continued to live upon and enjoy the possession of and the income from the land; that she subsequently resigned as executrix, and at the time of this action there was neither executor nor administrator, and the estate had been fully administered; that no suit at law was ever brought for the money, and that the note and mortgage by the executrix to the plaintiff were void; that the money obtained by that means from the plaintiff was paid to the Connecticut Mutual Life Insurance Company, and thereupon the insurance company released its mortgage of record; that the interest was paid to plaintiff up to March 12, 1895, and there was due at the date of the decree in this action $739.

The court finds, as conclusions of law, that plaintiff was entitled to be subrogated to the insurance company's mortgage; to have the release of that mortgage set aside and have the same foreclosed for the sum of $739, and

to recover costs. Such a decree was entered. Supersedeas bond was given and an appeal taken, and the question now is as to plaintiff's right, upon this record, to such relief.

Counsel for defendants say not: *First,* because plaintiff's claim of subrogation was barred by the statute of limitations at the time of the commencement of this action, namely, November 5, 1900; *Second,* because the Connecticut Mutual Life Insurance Company was not made a party defendant; and *finally,* because the facts do not warrant any such subrogation. As to the first point they cite 24 Am. & Eng. Ency. Law, 322:

"The general rule is, that the claimant must take steps to enforce his right of subrogation within the period prescribed as a limitation to the enforcement of simple contracts, for this merely equitable right will not be enforced at the expense of a legal one."

This doctrine seems to relate wholly to cases of subrogation on behalf of a surety or one occupying the position and having rights of a surety to equitable relief, as subsidiary to a legal claim. It rests upon the fact that payment by the surety does not, *ipso facto,* create in him any title to the securities. His primary claim is against his principal for repayment of the money. Until he has obtained through equity an ownership in the securities, they are not his and he has no right to enforce them merely by reason of the payment.

As pointed out by Mr. Pomeroy, the right of others than sureties in mortgages, by reason of having paid them off, is in the nature of an equitable assignment rather than than subrogation. 3 Pomeroy, Equity Jurisprudence (2d ed.), sec. 1211. Where the payment, *ipso facto,* only entitles the payor to be indemnified, and gives him an immediate action at law to recover such indemnity, and his right to the possession and control of any of the securities held by the creditor is merely secondary and for the purpose of insuring such indemnity; whenever the statute of limitations has run aganst the recovery of such indemnity, it would also run against any equitable remedy

for the obtaining of it.  If the transaction, however, as is
claimed in the case at bar, results, *ipso facto,* in an equi-
table assignment of a mortgage, then rights under it would
seem to pass to the assignee and to be enforceable during
the life of such mortgage.

In the present instance, if the transaction between the
plaintiff and the executrix resulted, as the trial court
found, in the passing of a void note and mortgage from
the executrix to the plaintiff, and the result of the trans-
action was that the rights of the Connecticut Mutual
Life Insurance Company against this land were equitably
transferred to plaintiff, then it would seem that at any
time during the life of such mortgage plaintiff could as-
sert such equitable ownership.  We have not examined all
the cases cited by defendants.  They are cited, however,
as cases of subrogation on behalf of a surety who has paid
his principal's debt.  None of them are claimed to be
cases of equitable transfer of ownership in a mortgage,
independent of a legal claim.  As above suggested, the
subrogation in such cases, being a mere incident to the
recovery of indemnity, would be lost whenever the action
for indemnity became barred.  In the case of *Betts v. Sims,*
35 Neb. 840, the court enforced mortgages much more than
four years after their equitable transfer to Sims by reason
of their payment by him to protect his supposed title in
the land.  It is true that in that case Sims was in pos-
session and asserting the mortgages as equitably entitling
him to their payment, before he should be ousted.  The
ordinary rule that limitation statutes do not apply where
equity has sole jurisdiction (33 Century Digest, col. 345),
would seem applicable only where there is a distinct
equity jurisdiction.  The Nebraska statute of limitations
seems clearly to have been intended to apply to all the
forms of the "civil action" provided for in section 2 of our
code.  The numerous cases, therefore, gathered in the
Century Digest do not seem to furnish us a precedent, but
there seems no doubt of the propriety of extending the
limit of time within which plaintiff may assert his rights

in this land, if he has any, to ten years from the maturity of the original mortgage, and he is amply within such time.

It is also urged that the original mortgagee is an essential party to this action, without whose presence it can not be maintained. It is alleged in the petition, not only that the insurance company was paid in full, but that a formal release of its mortgage was placed of record, and a part of the relief asked is the cancelation of this record. Doubtless, under ordinary circumstances, when one asks subrogation in reference to a chose in action, he must bring the party, whose position he seeks, into the action. In *Aultman, Miller & Co. v. Bishop,* 53 Neb. 551, a judgment creditor, whose judgment plaintiff claimed to have paid off, was held to be properly joined. It has been held, however, that it is not necessary to make a judgment creditor a party to any action for subrogation where he has satisfied his claim of record. *Rosenthal v. Sutton,* 31 Ohio St. 406; *Fridenburg v. Wilson,* 20 Fla. 359.

We see no greater or better reason for requiring a mortgagee who has satisfied his claim of record to be brought into the litigation. In this case, no relief is asked against the original mortgagee. Its release of record is a complete estoppel against any claim it could assert against the plaintiff in this case, and a complete protection to defendants if they pay the claim of plaintiff. There seems no good reason why the insurance company should have been included.

A more serious question has been whether the facts of this case entitle the plaintiff to any subrogation. Counsel for appellee cite *Meeker v. Larsen,* 65 Neb. 158, and seek to distinguish that case from the present one, on the ground of an agreement in the present case that plaintiff should have a lien upon the land. In *Meeker v. Larsen,* however, as in this case, a mortgage upon the land was given by the widow. In the present case, the mortgage is signed by the holder of the life estate as "executrix," and it was supposed by the parties at the time that she was

authorized to execute it on behalf of the estate to take up the insurance company's mortgage. How the mortgage was signed in the case of *Meeker v. Larsen* does not appear, but it does appear that it was intended to give to the plaintiff a lien upon the land covered by the original mortgage. There is in this case no agreement, any more than in that, for the maintenance of the lien of the original mortgage. There seems to have been no agreement in either case for a "first lien." The plaintiff in each case, doubtless, supposed he was getting, by reason of the newly executed mortgage, a valid lien upon the premises. In *Meeker v. Larsen*, however, so far as the opinion indicates, there was nothing from which the court could find an intention of the parties to convey, in the newly executed mortgage, anything more than a lien upon the widow's life estate. In the present case the court finds that it was intended to mortgage the entire property on behalf of the estate. The mortgage by the widow recited that she had obtained authority for making it. The question, then, in this case, is: Does the furnishing of money to discharge a valid lien, under the supposition of the loaner that he is getting a valid lien, entitle him to subrogation, he supposing, and having a right to suppose, that the executrix was authorized to make to him a valid mortgage?

The Nebraska cases bearing on this question do not seem directly to determine it. In *Betts v. Sims*, 35 Neb. 840, a defendant who had taken possession of land under a deed from a possessor whose own deed was void, because not signed by the wife of a homestead tenant, and who, while in possession, without knowledge of the defect had paid mortgages, was held entitled to recover on them as an equitable condition of plaintiff's recovery of the premises.

In *Bohn Sash & Door Co. v. Case*, 42 Neb. 281, plaintiff, in entire ignorance of an inchoate mechanic's lien, had furnished money to pay off an old mortgage, and taken a new one under an express agreement with the owner of the property that the new mortgage was a first

lien. The new mortgagee was held to have no right as against the lienholder to subrogation.

In *Rice v. Winters,* 45 Neb. 517, the grantee in a third mortgage, given expressly to raise money to take up a first one, took his security on the faith of an unauthorized release of the second one and upon an express agreement that he was to have a first lien, and was allowed no subrogation as against the second mortgage.

These cases, together with *Meeker v. Larsen,* seem to establish, so far as this state is concerned, that the furnishing of money to pay off a former mortgage and the taking of a new one, furnish no ground for subrogation on the part of the taker of the new security, although it was taken under the supposition that it conveyed a first lien.

It is to be observed, however, that in each of these cases the claimant got something. In each of them, he was chargeable with negligence in not ascertaining the facts or with ignorance of the law. In the present case, the plaintiff was assured by the county judge that the executrix had authority to make this mortgage. If a proper order had been entered by the county judge, she could have made a valid mortgage to take up that of the insurance company. Compiled Statutes, chapter 23, section 344 (Annotated Statutes, 5183). In *Wilkins v. Wilkins,* 35 Neb. 212, a *dictum* says that a father, who on the strength of a void bill of sale has paid mortgages on his son's property, can, probably, be subrogated to the mortgagee's right, though unable to recover in replevin on his bill of sale.

The present facts offer at least as strong a case. The executrix and the plaintiff were certainly not chargeable with negligence in taking the county judge's assurance as to her authority. The executrix having paid the mortgage and note solely on behalf of the estate, and so made the new one, and not in any manner with intention to bind herself on her own estate, it can not be held to be her own obligation. The plaintiff is remediless, unless he shall be held equitably entitled to the ownership of this mortgage, which he furnished the money to pay.

In these circumstances, does subrogation, "that creature of equity courts, not owing its existence to statute or to custom and not depending upon contract, invented and applied to do justice, or to prevent injustice," furnish a remedy? There is good authority for holding that it does. In the recent case of *Cumberland Building & Loan Ass'n. v. Sparks,* 49 C. C. A. 510, a loaner who had furnished money to pay off a prior mortgage, under an agreement that it should have a first lien, and had taken an invalid mortgage for its security, was held entitled to subrogation, not only against the mortgagor, but against another lienholder who had notice of the facts. The opinion is by circuit judge Thayer. The plaintiff's own mortgage was unenforceable because of a defective acknowledgment.

The supreme court of Illinois, in *Home Savings Bank v. Bierstadt,* 168 Ill. 618, 61 Am. St. Rep. 146, gave subrogation to one who had advanced money to discharge prior trust deeds, upon the strength of an abstract which failed to show a subsequent trust deed to another person, whose security was not impaired by the change. The Illinois court say that "conventional subrogation" will always be decreed, where it is in accordance with the understanding of the parties, and there is no gross negligence and no injurious result to third parties. Both of these cases are abundantly fortified by other decisions.

It would, probably, serve no good purpose to discuss the various other cases. They will be found gathered in *Straman v. Rechtine,* 58 Ohio St. 443, 51 N. E. 44. Perhaps it should be remarked that where money has been loaned to discharge a prior mortgage, and for any reason the money can not be made on the new mortgage, three reasons for refusing subrogation are found in the cases denying it. These are negligence of the loaner, as in *Bohn Sash & Door Co. v. Case* and *Rice v. Winters, supra;* mistake of law which gives no ground of relief, as in *Meeker v. Larsen, supra,* and in *Brown v. Rouse,* 125 Cal. 645, 58 Pac. 267; and intervening rights of innocent third parties. None of these appear in this case.

Defendants contend that the trial court's finding as to the county judge's assurances to plaintiff are unauthorized by the evidence. The testimony, however, shows that the executrix and plaintiff both went to the county judge, explained to him the situation, and he called in Mr. Philpott and assured both of the parties that Mr. Philpott's advice was trustworthy, and that they acted on the assurance of the county judge. Both seem to have been ignorant. The trial court's finding that they acted on the judge's assurance is clearly supported by evidence. Whether or not counsel's complaint of there being no evidence to sustain the finding that the personal estate was exhausted at the time of the mortgage's maturity is well founded, we have made no effort to ascertain. It seems unimportant. There is no showing of any injurious change in the devisees' position because of plaintiff's paying the mortgage.

It is recommended that the decree of the district court be affirmed.

AMES and OLDHAM, CC., concur.

By the Court: For the reason stated in the foregoing opinion, the decree of the district court is

AFFIRMED.