## Todd's Executor, et al. v. First National Bank, et al.

(Decided January 4, 1917.)

### Appeal from Owen Circuit Court.

1. Appeal and Error—Right of Review—Estoppel—Acquiescence in
   Decision.—Where, in a suit to settle the estate of a decedent,
   more land is ordered sold than is necessary to pay the debts for
   which the estate in remainder is liable, a joint purchase by the
   life tenant and two remaindermen, one of whom is an infant, of
   one of the tracts ordered to be sold, the execution and payment of
   two of the sale bonds, the taking possession of the land and the
   execution of a mortgage to a third party, do not show such an un-
   conditional and voluntary acquiescence in the judgment as to bar
   the right of appeal, where every step in the proceedings was con-
   tested by the appellants, and, not being in a position to supersede
   the judgment, the only way they could protect their rights was to
   purchase one of the tracts ordered to be sold.

2. Life Estates—Charges—Liability of Remaindermen.—The ordinary
   expense of the care and management of a life estate must be paid
   by the life tenant and not by the remaindermen.

3. Estoppel—Life Tenants—Bills and Notes.—Where one of two life
   tenants permits the other to take sole charge of the property and

conduct it for their joint benefit, to execute notes in their joint names in order to obtain money to purchase stock and other supplies, and to pay the running expenses of the property, and receives the benefit of such loans, she is estopped to say that the execution of the notes was not authorized by her.

4. Life Estates—Joint Life Tenants—Debts.—The life estate of one joint life tenant is not liable for the debts created by the other, unless incurred in the conduct and management of the property in which they have a joint life estate.

5. Life Estates—Life Tenant—Satisfaction of Lien—Contribution from Remainderman.—Where a life tenant of real estate pays off a mortgage or other debt or encumbrance outstanding against the entire estate, he is entitled to reimbursement from the remainderman and to a lien on the property for the remainderman's share.

6. Life Estates—Life Tenant—Interest.—It is the duty of the life tenant of real estate to keep down the interest accruing on outstanding encumbrances against the entire estate, at least to the extent of the income or rental value of the property.

7. Subrogation—Life Tenant—Creditors of—Remaindermen.—Where a life tenant has discharged the principal of an encumbrance outstanding against the entire estate and thereby acquired a lien on the property as against the remaindermen, his creditors will be subrogated to his rights.

8. Life Estates—Life Tenant—Taxes—Creditors of Life Tenant—Contribution From Remainderman.—It is the duty of the life tenant to pay the taxes levied and assessed on the property during the continuance of the life estate, and for such payments neither he nor his creditors are entitled to reimbursement from the remainderman.

9. Subrogation—Outstanding Encumbrances—Life Tenant—Remaindermen.—One who furnishes money to life tenants to discharge the principal of an outstanding mortgage against the entire estate and takes from the life tenants a new mortgage, which is believed by all of the parties to cover the entire estate, but, as a matter of fact, covers only the life estate, is entitled to be subrogated to the lien of the life tenants on the estate in remainder.

10. Usury—Compensation—Agent to Procure Loan.—Compensation paid by a borrower to an agent for his services in procuring a loan is not usury.

11. Estates—Remainder—Debts of Testator—Liability.—Where a testator devised his land to his wife and son for life, with remainder to his son's children, subject to the payment of his debts, a creditor of the testator has a preferred claim, for which the estate in remainder is liable.

12. Executors and Administrators—Settlement of Estate—Sale of Property—Infants.—In a suit by the executor of a decedent against his devisees to settle the estate by a sale of the realty to pay the debts, a judgment directing the sale of more land than is necessary to pay the debts of the decedent is void as to infants, unless

the case is prepared as provided in the sections of the code relating to the sales of infants' real estate.

13. Homestead—Life Estate.—One in the occupancy of land in which he has an estate for life is entitled to a homestead therein.

VALLANDINGHAM & ALEXANDER and W. A. LEE for appellants.

BOTTS & PERRY, TOMLINSON & VEST and J. L. W. SLAUGHTER for appellees.

OPINION OF THE COURT BY WILLIAM ROGERS CLAY, COMMISSIONER—Reversing.

J. S. Todd, a resident of Owen county, died on June 29th, 1904, leaving the following will:

"I, J. S. Todd, being of sound mind and able bodied enough to write, do will and bequeath to my dearly beloved wife, Sophia J. Todd, all of my personal property and household goods to have and to hold. The real estate I will jointly to my wife, S. J. Todd, and my dearly beloved son, O. K. Todd, after my just debts are paid. The farm to be run mutually. My wife, S. J. Todd, is to have a maintenance out of the proceeds of the farm, if it requires one-half of it.

"Power is hereby given to my wife, S. J. Todd, and son, O. K. Todd, to sell or convey all or any part of the real estate if they mutually agree so to do, and the proceeds, if reinvested, to be subject to the conditions of the will.

"Should O. K. Todd die before my wife, S. J. Todd, the lands revert back to S. J. Todd as guardian for the bodily heirs of O. K. Todd.

"At the death of my wife, S. J. Todd, the property is to go to O. K. Todd.

"I hope this will and desire of mine will be carried out without them having to give bond.

"If S. J. Todd and O. K. Todd should both die before the bodily heirs of O. K. Todd become of age, the court is requested to appoint a guardian and require him to give a gilt edge bond.

"The only regret I have is that I have not ten times as much to leave as I have. It would be a feeble way to show the appreciation of their devoted love they have shown to and given me.

"I appoint S. J. Todd and O. K. Todd as the executors of my will."

At the time of his death J. S. Todd left surviving him his widow, S. J. Todd, and one son, O. K. Todd. The latter's family consisted of his wife, Ella Todd, and two children, Fred H. Todd and Mary Todd. The testator, J. S. Todd, owned certain personal property and two farms, one of 61 acres and the other of 281 acres. Prior to his death the testator and his wife and their son and his family occupied the home farm as one family. Upon the probate of J. S. Todd's will, his wife, S. J. Todd, and son, O. K. Todd, qualified as executors. From that time on the farming business was conducted in their joint names through O. K. Todd, who seems to have assumed charge thereof. In 1912, O. K. Todd died intestate, leaving surviving him his widow and two children, Fred H. Todd and Mary Todd. His mother, S. J. Todd, and wife, Ella Todd, qualified as his administrators.

This suit was brought by S. J. Todd and Ella Todd, administrators of O. K. Todd, and by S. J. Todd, surviving executor of J. S. Todd, against O. K. Todd's infant children, Fred H. Todd and Mary Todd, and others, to construe the will of J. S. Todd and to settle both his and O. K. Todd's estates. The case was referred to the master commissioner to hear and report on claims, and numerous claims against the estate of O. K. Todd were filed and allowed. Fred H. Todd and Mary Todd, the infant children of O. K. Todd, answered through their guardian and set up the claim that under the will of J. S. Todd, S. J. Todd and O. K. Todd took only a life estate with remainder to them, the answering defendants. The chancellor rejected this contention and held that S. J. Todd and O. K. Todd took the fee. On appeal the judgment was reversed, this court holding that the widow and son of J. S. Todd took only a life estate, with remainder to the children of O. K. Todd. Todd's Guardian, et al. v. Todd's Admrs., et al., 155 Ky. 209. Upon the return of the case, the creditors who had filed claims against the estate of O. K. Todd filed the same claims against the estate of the testator, J. S. Todd.

Prior to the death of the testator, J. S. Todd, he executed to H. D. Barker a note for $3,000.00, secured by a mortgage on the testator's land. At the time of the testator's death there remained due on this note about $2,700.00. Thereafter certain payments of principal and interest were made on the note by O. K. Todd.

In the month of November, 1911, S. J. Todd and O. K. Todd applied to D. B. Wallace for a loan to discharge the balance of the Barker debt, agreeing to pay Wallace $100.00 for his services. Wallace arranged to obtain the loan from S. C. Hicks. Thereupon a new mortgage was executed by S. J. Todd and O. K. Todd to secure the loan of $2,100.00. Of this sum, $1,912.20 was applied to the payment of the balance of the Barker debt. Wallace retained $100.00 for his services in securing the loan and paid the balance to the mortgagors. The mortgage was executed in the belief that the mort-. gagors owned a fee in the land. The Barker mortgage was released.

In the claim of the Citizens Bank of New Liberty for $1,123.60 there is included the amount of two notes executed by the testator, J. S. Todd, and O. K. Todd, aggregating, at the time of the testator's death, the sum of $727.00.

It further appears that O. K. Todd paid the testator's undertaking bill. It may be that, in addition to the balance of the Barker debt and the sum of $727.00 included in the claim of the Citizens Bank of New Liberty and the undertaker's bill, there were other small debts owing by the testator at the time of his death. On this question we express no opinion at present.

On final hearing the chancellor rendered judgment against S. J. Todd and the estate of O. K. Todd in favor of the various claimants. He further adjudged in substance that under the will of the testator the executors were authorized to conduct the farm; that upon the death of O. K. Todd the debts due for the management of the farm did not exceed those due by the testator at his death; that the farm was not self-sustaining and that certain banks supplied the excess to run the farm; that, as against the remaindermen, the executors were entitled to compensation for managing the estate; that in discharging the debts of the testator they were subrogated to the lien of his creditors; and that the executors' creditors who supplied the money to discharge, not only the testator's debts, but the debts incurred by the executors in the management of the farm, were subrogated to the rights of the executors as against the estate in remainder. He also held that all the debts incurred by the executors in the management of the farm were debts against the estate in remainder.

The claimant, Hicks, was given a prior lien, not only on the life estate of S. J. Todd, but also on the estate in remainder. Thereupon the chancellor ordered the testator's land, or so much thereof as was necessary, sold for the purpose of paying the various claims allowed. From this judgment S. J. Todd, in her own right and as executor of J. S. Todd, and Fred H. Todd and Mary Todd, by their guardian, appeal.

1. After the rendition of the judgment of sale the land was sold in two tracts. F. A. Taylor became the purchaser of the 61-acre tract at the price of $3,873.50. Mrs. S. J. Todd, the life tenant, and Fred H. Todd and Mary Todd, the remaindermen, became the purchasers of the 281-acre tract at the price of $3,747.76. Thereafter the sales were confirmed and bonds for the purchase price executed by the purchasers. Mrs. Todd and the remaindermen also took possession of the land which they purchased, paid two of the purchase bonds and executed a mortgage on the land to J. P. Sidebottom and others. It is insisted on behalf of the appellee that because of the above acts by appellants, they have ratified the judgment of sale and are now estopped to assert its invalidity, and that appellees' motion to dismiss the appeal should be sustained.

If a person voluntarily acquiesces in, or recognizes the validity of, a judgment, order, or decree, or otherwise takes a position which is inconsistent with the right to appeal therefrom, he thereby impliedly waives his right to have such judgment, order or decree reviewed by an appellate court. But, in order to bar the right of appeal on the ground of acquiescence, the acts relied upon must be such as to clearly and unmistakably show acquiescence, and it must be unconditional, voluntary, and absolute. 3 C. J. 665; Robinson v. Hays, 186 Fed. 295; James v. James, 55 S. W. 193, 21 R. 1401; Madden v. Madden, 169 Ky. 367. In the case under consideration the judgment of sale, as will hereafter be shown, subjected the estate in remainder to debts for which that estate was not liable. More land was sold than was necessary to pay the debts for which the estate in remainder was liable. One of the remaindermen was an infant. Every step in the proceedings leading up to the judgment of sale was contested by the appellants. With their entire estate ordered to be sold, the appellants were not in a position to supersede the

judgment. The only way to protect their own interests was to purchase one of the tracts of land ordered to be sold. The circumstances of the parties affected have not been so changed that their rights may not be protected in case of a reversal. We, therefore, conclude that the acts relied on do not show such an unconditional and voluntary acquiescence in the judgment as to bar the right of appeal.

2. With respect to the various errors relied on for a reversal, our conclusions may be summed up as follows:

A. Under the will of J. S. Todd, as heretofore construed by this court, S. J. Todd, his widow, and O. K. Todd, his son, took a mere life estate with remainder to O. K. Todd's children, Fred H. and Mary Todd. Therefore, in managing the farm the life tenants acted solely in their own interest. That being true, they were without authority to incur any new debts for which the estate in remainder would be liable, since the ordinary expense of the care and management of a life estate must be paid by the life tenant. Peirce v. Burroughs, 58 N. H. 302; Perrine v. Newell, 62 N. J. Eq. 14, 49 Atl. 724; Reiff's Estate, 124 Pa. St. 145, 16 Atl. 636; Bates v. Rider, 44 S. W. 666, 19 Ky. L. Rep. 1768; 16 Cyc. 636.

B. The life estate of S. J. Todd is liable for all debts created by O. K. Todd in the conduct of the farming business, whether represented by notes or otherwise. While it may be true that she did not give specific authority to O. K. Todd to sign her name to certain contested notes, the evidence clearly shows that, although she was equally interested with him in the conduct of the farm, she permitted him to take sole charge of the farms and conduct them for their joint benefit. This arrangement she acquiesced in for a number of years. The contested notes represent money borrowed by him to purchase stock and other supplies and to pay the running expenses of the farms. Borrowing for these purposes is an ordinary incident of the farming business. She received the benefit of the loans in question. Having entrusted her son with the sole management of the farms and having impliedly authorized him to do what was reasonably necessary to carry on the business in a successful manner, and having received the benefit of the sums which he borrowed on the con-

tested notes, we conclude that she is now precluded from saying that their execution was not authorized by her.

C. The life estate of S. J. Todd is not liable for the debts which were not incurred by O. K. Todd in the conduct of the farming business. Hence judgment should not have been rendered against S. J. Todd on the note for $51.50 in favor of the Citizens Bank of New Liberty, or on the note for $130.00 in favor of the Owenton Bank. On both of these notes Fred H. Todd was principal and O. K. Todd surety. The first note was given for a colt, the second for a buggy for Fred H. Todd. Neither had any connection with the farming business.

D. Where the life tenant pays off a mortgage or other debts or encumbrances outstanding against the entire estate, he is. entitled to reimbursement from the remainderman and to a lien on the property for the remainderman's share. Jones v. Gilbert, 135 Ill. 27, 25 N. E. 566; Whitney v. Salter, 36 Minn. 103, 1 Am. St. Rep. 656, 30 N. W. 755; Tindall v. Peterson, 71 Neb. 160, 98 N. W. 688, 6 A. & E. Ann. Cas. 721; Kocher v. Kocher, 56 N. J. Eq. 545, 39 Atl. 535; Barnum v. Barnum, 42 Md. 253; Peck v. Glass, 6 How. (Miss.), 195; Callicott v. Parks, 58 Miss. 528; Daviess v. Myers, 13 B. Mon. 511. However, it is the duty of the life tenant of property to keep down the interest accruing on such encumbrances during the continuance of his estate, at least to the extent of the income or rental value of the property. Parrish v. Ross, 103 Ky. 33, 44 S. W. 134, 19 Ky. L. Rep. 1676; Bowen v. Brogan, 119 Mich. 218, 77 N. W. 942, 75 Am. St. Rep. 387; Jones v. Sherrard, 22 N. C. 179.

E. Where the life tenant has discharged the principal of an encumbrance outstanding against the entire estate and thereby acquired a lien on the property as against the remaindermen, his creditors will be subrogated to his rights.

F. It is the duty of the life estate to pay the taxes levied and assessed on the property during the continuance of the life estate, and for such payments neither he nor his creditors are entitled to reimbursement from the remainder. Creutz v. Heil, 89 Ky. 429, 12 S. W. 926, 11 Ky. L. Rep. 652; Johnson v. Smith, 5 Bush 102; Arnold v. Smith, 3 Bush 163.

G. With respect to the claim of S. C. Hicks, the following facts appear: The loan was applied for to pay the balance due on the mortgage debt incurred by the testator. The note to Hicks was for $2,100.00 and was secured by a mortgage executed by the life tenants and purporting to cover the fee. Wallace, who obtained the loan, was the agent of the life tenants. He charged $100.00 for his services. $1,912.20 was applied to the discharge of the Barker mortgage. The balance of the loan was applied to other purposes. It is insisted that the doctrine of subrogation does not apply and that Hicks should not have been awarded a preference over the other creditors. Clearly the life tenants were not mere volunteers, but had an interest in the property which they had the right to protect. When, therefore, they discharged the mortgage lien, they were entitled to reimbursement from the remaindermen and to a lien on the property to the extent of the principal of the debt so discharged. All the parties believed in good faith that the life tenants owned a fee. That being true, Hicks, who furnished them the money to discharge the indebtedness, and took in lieu of the original mortgage a new mortgage which proved defective, is clearly entitled to be subrogated to the lien of the life tenants. Connor v. Home & Sav. Fund Co. Bldg. Asso., 26 Ky. L. Rep. 109, 80 S. W. 797; Wilson v. Hubbard, 39 Wash. 671, 82 Pac. 154; Boevink v. Christiaanse, 69 Neb. 256, 95 N. W. 652; Berry v. Stigall, 253 Mo. 690, 162 S. W. 126, 50 L. R. A. (N. S.), 489. To the extent, however, that his money was applied to the payment of interest accruing after the life estate began, he is not entitled to any lien on the property as against the remaindermen, and to that extent the judgment is erroneous.

Since Wallace, who procured the loan, acted as the agent of the life tenants, the compensation paid to him cannot be regarded as usury. Sidway v. Harris, 69 Ark. 387. It follows that Hicks is entitled to a first lien on the life estate of S. J. Todd to secure the whole amount of his mortgage debt.

H. As before stated, there is included in the claim of the Citizens Bank of New Liberty for $1,123.60 the amount of two notes executed by the testator, J. S. Todd, and the life tenant, O. K. Todd, aggregating, at the time of the testator's death, the sum of $727.00.

The testator devised all of his personal property and household goods to his wife, S. J. Todd. He then devised his real estate to S. J. Todd and O. K. Todd for life, with remainder to O. K. Todd's bodily heirs after his just debts were paid, thus clearly showing that he intended that his debts should be paid out of his real estate. Both the life tenants and remaindermen acquired title burdened with the testator's debts. To the extent, therefore, of $727.00, the Citizens Bank of New Liberty has a preferred claim, for which the estate in remainder is liable.

I. The chancellor allowed debts against both the life estate and estate in remainder, aggregating about $7,000.00, when, as a matter of fact, the claims for which the estate in remainder was liable do not exceed $3,500.00 or $3,600.00. The 61-acre tract of land brought $3,873.50, or apparently more than enough to pay the debts for which the estate in remainder was liable. Notwithstanding this fact, the other tract of 281 acres was sold. It is clear, therefore, that more land was sold than was reasonably necessary to pay the debts for which the estate in remainder was liable. When the judgment was rendered one of the remaindermen was an infant. In an action to settle the estate of a decedent in which infants are interested, a judgment directing a sale of more land than is necessary to pay the debts will be void as to the interest of the infants, unless the case is prepared as provided in the sections of the code relating to the sales of infants' real estate. Barry v. Fain's Admr., et al., 172 Ky. 309; Clay's Guardian, et al. v. Rice, 172 Ky. 164; Elliott v. Fowler, &c., 112 Ky. 376. Here the case was not so prepared, and the court should not, upon the showing made, have ordered the sale of any portion of the 281-acre tract of land. Since it was necessary to sell the 61-acre tract of land, the reversal of the judgment of sale will not affect the title of the purchaser of that tract.

J. One in the occupancy of land in which he has an estate for life is entitled to a homestead therein. Robinson v. Smithey, 80 Ky. 636; Suter v. Quarles, 22 Ky. L. Rep. 1080, 58 S. W. 990.

K. On the return of the case, the court will allot to Mrs. S. J. Todd a homestead in the 281-acre tract of land of the value of $1,000.00, and not such a quantity of land that her life estate therein would be worth

$1,000.00. McDowell v. Grubbs, 116 Ky. 751. He will then order her life estate in the rest of the land sold for the purpose of paying her debts. He will not order the estate in remainder in said tract belonging to Fred H. and Mary Todd sold, except upon a clear showing that it is necessary to do so to discharge obligations for which such estate in remainder is liable.

Judgment reversed and cause remanded for proceedings consistent with this opinion.