## Youngblood v. Dempewolf et al.

(Decided December 15, 1931.)

VANCE & HEILBRONNER for appellant.

WORSHAM & KING for appellees.

OPINION OF THE COURT BY CREAL, COMMISSIONER—Affirming.

On May 29, 1928, W. H. Dempewolf as first party and Nat H. Youngblood, trustee, as second party, entered into a contract wherein it was recited that the

134

latter had sold and agreed to convey to the former the life estate of Geo. W. Stanley, Sr., in certain lands in Henderson county which the record discloses consists of three tracts of land containing 88, 580, and 238 acres, respectively, and provided that $2,500 cash should be paid upon delivery of the deed, and $1,000 should be deposited in escrow with the Ohio Valley Banking & Trust. Company to be held by it until liability for taxes due on the land by the life estate for the years prior to the year 1928 on account of assessment made in the year 1927 should be determined. It was further provided that, if Dempewolf or the life estate should be held liable for any such taxes, same should be paid out of the $1,000 escrow deposit and any balance remaining be paid to the trustee.

On May 29, 1929, Nat H. Youngblood, as trustee, filed this action in the Henderson circuit court against W. H. Dempewolf, the Ohio Valley Banking & Trust Company, and Geo W. Stanley, Jr., setting up and reciting the provisions of the contract, and alleging that neither plaintiff, the life estate, nor Dempewolf had been held liable for any taxes as recited in the agreement, and no suit had been brought against the first party in any court to subject the land or life estate to the payment of any taxes; that, by reason of the matters recited, plaintiff is entitled to receive the $1,000 deposited with the defendant bank; and that payment had been denied and refused. It was further alleged that defendant Geo. W. Stanley was asserting some claim to the $1,000 escrow deposit, and it was asked that he be required to assert his claim.

By answer, the defendant bank admitted that it holds the $1,000 in escrow for the purposes mentioned in the agreement, and that it is ready and willing to pay same out as may be directed by the court.

Defendant Geo. W. Stanley filed an answer, counterclaim, and cross-petition which has been misplaced; however, by agreement, he was permitted to file a carbon copy of the original to supply the record. By this pleading he alleged that legal title to tract No. 1, containing 88 acres, No. 2, containing 580 acres, and No. 3, containing 230 acres, was vested in J. F. Stanley, Geo W. Stanley, and Neil M. Stanley, respectively, on July 1, 1926; that the tracts were listed and assessed for taxation against these owners, but that the taxes so levied and assessed against them were not paid and became delin-

quent on and after December 31, 1927; that on February 23, 1928, the sheriff of Henderson county, having failed to collect the taxes, and being unable to distrain therefor against any personal property owned by the respective holders of the legal title to the lands, advertised and offered the three tracts for sale for the payment of the delinquent taxes; that defendant Stanley became the purchaser of all three tracts for the sums of $35.01, $459.-43, and $224.78, respectively, whereupon the sheriff, as required by statute, delivered to him certificates evidencing the sales, and these certificates were accepted by him and caused to be recorded in the clerk's office of the Henderson county court in Book 75, on pages 279, 280, and 281. Copies of these certificates, as is recited in the pleading, were filed therewith as parts thereof, marked Exhibits A, B, and C, respectively. He asked that the sums paid by him as delinquent taxes against the three tracts of land, together with penalties and the interest thereon, be paid out of the escrow deposit.

By reply, in addition to traversing the allegations of the petition, plaintiff affirmatively alleged in substance that the three tracts referred to in the answer of Geo. W. Stanley Jr., were owned jointly by Geo. W. Stanley, Jr., and his two brothers, Neil and J. F. Stanley, and possibly Kate Stanley was a joint owner in tract No. 2; that J. F. Stanley and G. W. Stanley, at the time of the assessment of the property, and up to the time of the alleged sale thereof, and G. W. Stanley, Jr., owned personal property of a value more than sufficient to satisfy the taxes which should have been subjected to the payment thereof, before attempting a sale of the real estate; that the money paid by G. W. Stanley, Jr., in the satisfaction of taxes against the property was money furnished and supplied by "said Stanleys" jointly.

The issues were completed by a rejoinder filed by Geo. W. Stanley, Jr., in which some correction was made as to the ownership of tract No. 2 as alleged in his answer.

While an order appears in the record reciting that, by agreement of parties, the case was to be heard on oral evidence or depositions, the judgment entered on Nov. 7, 1930, recited that the case was heard by the court on the pleadings and exhibits filed, and it was adjudged by the court that, by virtue of the purchases by the defendant Geo. W. Stanley at the sheriff's sale, he had acquired

a lien on the three tracts of land to secure the repayment to him of such sums, together with costs, interest, and penalties, as provided by law, and that, under the agreement between plaintiff and Dempewolf, the lien should be discharged by payment from the escrow deposit. From that judgment plaintiff has prosecuted this appeal.

It is first asserted by counsel for appellant that under the agreement whereby Dempewolf purchased the life estate of G. W. Stanley, Sr., the $1,000 deposited in escrow was to apply to the payment of any taxes assessed in 1927, due 1928, that might be adjudged against the life estate, and that there was no pledge of the escrow deposit to secure the taxes assessed in 1926 and due in 1927. This position is certainly untenable, as the contract specifically provides that the $1,000 is to be held by the bank until the liability for taxes due on the land by the life estate for the years prior to 1928 is determined, and that, if the second party or the life estate is held liable for the taxes, so much of the deposit as may be necessary shall be applied for the payment of the taxes and the balance paid to the trustee.

It is further urged by counsel for appellant that Geo. W. Stanley, Jr., and his two brothers jointly owned the three tracts of land involved in this controversy, and that his alleged payment of the delinquent taxes against him was on behalf of himself and his brothers, who were liable for the taxes, and that he is not entitled to assert any claim to the $1,000 deposited in escrow by reason of such payments.

Aside from the recitation of facts found in appellant's brief which do not appear in the record, there is little, if anything, upon which to base a conclusion or finding that Geo. W. Stanley, Jr., owned a joint or any other interest in the lands in question, but, even if he did own or was making some claim to an interest in these lands, evidently whatever claim or interest he had was subject to the life estate which was adjudged to be owned by Geo. W. Stanley by decree in a former action.

No principle of law is more firmly established in this jurisdiction than that the life tenant is under a duty to maintain and preserve the estate for the remaindermen, and this includes the payment of taxes and assessments against the estate. Lindenberger v. Cornell, 190 Ky. 844, 229 S. W. 54; Creutz v. Heil, 89 Ky. 429, 12 S. W. 926, 11 Ky. Law Rep. 652; Chesapeake & O. R. R. Co. v. Ross-

kamp, 179 Ky. 175, 200 S. W. 496; Anderson v. Daugherty, 169 Ky. 308, 183 S. W. 545.

In the case of Todd's Ex'r v. First National Bank, 173 Ky. 60, 190 S. W. 468, 471, it is said:

"It is the duty of the life estate to pay the taxes levied and assessed on the property during the continuance of the life estate, and for such payments neither he nor his creditors are entitled to reimbursement from the remainder."

In the light of the foregoing and other authorities of the same import which might be cited, there is no escape from the conclusion that the life tenant is liable for taxes so long as the life estate continues. This being true, it would appear that the court properly adjudged that appellee Stanley be reimbursed for the delinquent taxes paid by him out of the $1,000 escrow deposit.

Question is made that the copies of the sheriff's certificates to appellee Stanley which it is alleged are filed as exhibits with his answer are not found in the record. As hereinbefore indicated, the original answer had been lost or misplaced, and the record was supplied by allowing him to file a carbon copy of the answer. We assume that the chancellor had seen or was acquainted with the contents of these certificates as the case was submitted upon the pleading and exhibits. In any event, it is now too late for appellant to raise any question as to the failure to file the exhibits as no such question was raised in the court below.

It is further insisted by appellant's counsel that the allegations of paragraph 6 of the reply, to the effect that the money paid by appellee Stanley in satisfaction of the taxes against the property in question was money furnished and supplied by the "said Stanleys" jointly, stands admitted, as there is no denial. He insists that, by reason of this admission, appellee Stanley is not entitled to a recovery. It will be noted that this allegation is very vague and indefinite, and does not charge that any particular person or number of persons contributed to the fund to pay the delinquent taxes or under what circumstances or by what agreement or understanding, if any, the money was furnished to appellee Stanley. The life estate would be liable for the taxes, even though the

138

money to pay the delinquent taxes had been furnished by all the remaindermen.

This record simply discloses that by a former action Geo. W. Stanley, Sr., was adjudged a life estate in various tracts of land, including the three to which reference has been made. Neither the judgment nor any of the record in that case appears in the record here, nor is there anything in the record indicating what other person or persons may have an interest in these lands. In view of this confusing and unsatisfactory state of the record, we fail to find anything upon which to base a conclusion that the judgment of the chancellor should be disturbed.

Judgment affirmed.