L. C. Marriner died on 3 May, 1921. He was married three times. By his first wife, Jane Marriner, who died on 18 May, 1890, he had two children, the plaintiffs in this case. By his second wife he had a son, Cecil Marriner, and by his third wife, Margaret Ella Marriner, he left three children — Sterling, Louise, and Louis Marriner. His widow, Margaret Ella Marriner, and his children by his third marriage are defendants in this case. It is not known whether Cecil Marriner, the son by his second wife, is living or dead, and his whereabouts is unknown. He was not made a party to the action.
On 1 January, 1890, Jos. W. Blount and wife, Mary I. Blount, made a deed to Jane Marriner for what is now known as "The Marriner Hotel Property." The consideration stated in the deed was $259. On the same day the deed was made L. C. Marriner and his wife, Jane Marriner, executed a mortgage to Jos. W. Blount, "For that, whereas, the said Jane Marriner is indebted to the said Jos. W. Blount in the sum of $259, for which said Jane Marriner has executed and delivered to the said Jos. W. Blount, as aforesaid, her bond of even date with this deed in said sum of $259, payable one, two, and three years after date, with interest thereon from date until paid, at the rate of 8 per centum per annum, payable on 1 January, 1891, and January, 1892, and January, 1893, hereafter, and it has been agreed that the payment of said debt shall be secured by the conveyance of the land hereinafter described."
Both deed and mortgage were at once recorded in Washington County.
On 9 January, 1893, Jos. W. Blount sold the land under the terms of his mortgage at the county courthouse door, and W. H. Fitchett became the last and highest bidder in the sum of $321. The same day W. H. Fitchett made a deed to L. C. Marriner; consideration, $321. These deeds were at once recorded (12 January, 1893). L. C. Marriner willed the property to his widow and children, the defendants in this action.
The plaintiffs bring this action and allege that their father, L. C. Marriner, "subsequent to the death of the said Mrs. Jane Marriner, to wit, on 9 January, 1893, having failed to pay or discharge the interest due upon the said mortgage debt, as plaintiffs are informed, believe and so aver, as he was in duty bound to do; and further, having failed to discharge said mortgage debt in toto as administrator of his deceased wife, the said Mrs. Jane Marriner, notwithstanding, as plaintiffs are informed, believe and aver, he was entitled to letters of administration upon her said estate, and notwithstanding further, as aforesaid, that the said Mrs. Jane Marriner died seized and possessed of property other *Page 451 
than that above described of value more than sufficient to discharge said mortgage debt, did, either for the purpose of subsequently holding said property in trust for himself and the plaintiffs, according to their respective interests of life tenant and remaindermen, or else with the design to defraud the plaintiffs of their interest as remaindermen, cause or procure said property to be sold under and by virtue of the provisions of the said mortgage; and did further, at said sale, purchase said property through the medium of one W. H. Fitchett, his agent," etc. Plaintiffs further claim that they were "in ignorance of the existence of the said mortgage and the sale thereunder whereby defendants claim title in fee inured to the said L. C. Marriner until after the death of the said L. C. Marriner and the production of said paper-writing alleged, as aforesaid, to be his last will and testament."
The plaintiffs pray "that the said L. C. Marriner may be adjudged to have held said property in trust for the plaintiffs after the expiration of his life estate, and that the defendants, if the said paper-writing alleged to be the last will and testament of said L. C. Marriner be valid, be adjudged to hold the said property as trustees for the plaintiffs; that plaintiffs be adjudged to own the said property in fee," etc.
Mrs. Margaret Ella Marriner, the widow, and as guardian ad litem for her children, answers and says: "It is denied that Mrs. Jane Marriner ever held any title or interest in the property known as the hotel property except the mere naked legal title, all the beneficial interest having at all times been in the said L. C. Marriner. These defendants are informed, and so aver, that Mrs. Jane Marriner was possessed of no estate and owned no property and paid no consideration for any conveyance made to her, and particularly paid none for the conveyance made to her, recorded in Book 30, page 34, but that all of said consideration was paid by the said L. C. Marriner, and Mrs. Jane Marriner held at most the legal title only for the benefit of the said L. C. Marriner. . . . That on or about 9 January, 1893, this property described in said mortgage was advertised and sold, at which time and place, as they are informed and believe, when W. H. Fitchett purchased the same. These defendants further aver that thereafter the said Fitchett, for valuable consideration, conveyed the said property described in said deeds to the said L. C. Marriner. . . . And these defendants specifically deny any fraud on the part of the said L. C. Marriner or said Fitchett or any one else connected with said sale."
The defendants further answer and say: "That for more than twenty years, and for more than twenty-one years prior to his death, the said L. C. Marriner was in open, notorious, adverse, exclusive and continuous occupancy over the premises referred to in the complaint, *Page 452 
exercising sole dominion of the same and using the same as his own, paying all taxes and making all use of the said property. That he built the hotel upon the same and placed all other improvements upon the said property which had theretofore been but a vacant lot. That if the plaintiffs ever had any cause of action against the defendants or against L. C. Marriner, under whom the defendants claim, which these defendants deny, the same arose more than twenty years prior to the bringing of this action, and these defendants especially plead the said lapse of time and the twenty-one-year statute of limitations in bar of the assertion of said claim."
Defendants plead the three, seven and ten years statute of limitations. They further say: "These defendants aver that the said claim of the plaintiffs, if any they ever had, being equitable in its nature, is a stale claim, and these defendants aver that the plaintiffs have slept upon their rights; and these defendants especially plead the laches of the plaintiffs, independent of any statute of limitations, in bar of the assertion of any such claim as set out in the complaint at this late day, and insist that this court of equity, by reason of said laches, should not permit the plaintiffs now to assert an equity which they must assert to entitle them to relief and which could have been asserted at any time for years past, when the defendants and those under whom they claim would have been in position to meet the same, and that to permit the assertion of the claim at this time would be to place the defendants at a great disadvantage."
The following issues were submitted to the jury, and their answers thereto:
"1. Was Mrs. Jane Marriner, at the time of her death in May, 1920, the owner in fee of the property in controversy, subject to the Blount mortgage, as alleged in the complaint? Answer: Yes.
"2. What amount was due upon said mortgage on 9 January, 1893? Answer: $321.73.
"3. What was the fair market value of said property on said date? Answer: $321.73.
"4. Did W. H. Fitchett bid in said property, at a sale under said mortgage, for and on behalf of L. C. Marriner, the life tenant, and take a deed therefor, as alleged in the complaint? Answer: No.
"5. Did L. C. Marriner cause or procure said sale to be made? Answer: No.
"6. Did said Marriner acquire said lands through Fitchett, in fraud of the rights of the plaintiffs, as alleged in the complaint? Answer: No.
"7. What was the usual rental of said property during years 1921, 1922, and 1923? No answer. *Page 453 
"8. Is plaintiffs' cause of action barred by the statute of limitations, as alleged in the answer? No answer.
"9. Is plaintiffs' cause of action barred by the plaintiffs' laches, as alleged in the answer? No answer."
The court below, on the verdict, gave judgment "that plaintiffs take nothing by their action and that defendants go without day," etc.
The plaintiffs assigned errors: the refusal of special prayers for instruction, the charge as given in certain particulars, the judgment of the court below, and appealed to this Court. The material assignments of error will be considered in the opinion.
The fifth issue submitted to the jury was as follows: "Did L. C. Marriner cause or procure said sale to be made?" To this issue the jury answered "No." Upon this issue the plaintiffs in apt time requested the court to charge the jury as follows: "If you believe the evidence and find the facts to be as testified, you will answer the fifth issue `Yes.'" And in the event the court refused to give this instruction, the plaintiffs requested the court to charge further upon this issue as follows: "The court charges you that, if you find by the greater weight of evidence that said mortgage sale was procured by Marriner, that is to say, that it was made at Marriner's instance or request; or if, by the greater weight of evidence, you find that the said sale was wholly or partially induced by Marriner's failure, while enjoying a life estate in said property, to pay the interest upon the Blount mortgage accruing after his said wife's death, then, in either of these events, I charge you to answer the fifth issue `Yes.'" The court refused to give either of these instructions, as requested, and in lieu thereof charged the jury upon the fifth issue as follows: "I instruct you again that unless you find, by the greater weight of the evidence, that Mr. Marriner actively besought and requested Mr. Blount to advertise and sell this property under the mortgage, and that Mr. Blount did advertise and make a sale, at the request of Mr. Marriner, you should answer the issue `No.'"
The refusal to give the prayers asked for and the charge as given is plaintiffs' first, fourth and fifth assignments of error.
The indebtedness recited in the mortgage made by L. C. Marriner and Jane Marriner, 1 January, 1890, to Jos. W. Blount was as follows: "For that, whereas, the said Jane Marriner is indebted to the said Jos. W. Blount in the sum of $259, for which said Jane Marriner has *Page 454 
executed and delivered to the said Jos. W. Blount, as aforesaid, her bond of even date with this deed in said sum of $259, payable one, two, and three years after date, with interest thereon from date until paid at the rate of 8 per centum per annum, payable on 1 January, 1891, and January, 1892, and January, 1893, hereafter, and it has been agreed that the payment of said debt shall be secured by the conveyance of the land hereinafter described.
The power of sale was as follows: "If the said Jane Marriner shall fail or neglect to pay the interest on said bond as the same may hereafter become due, or both principal and interest at the maturity of the bond, or any part of either, then, on application of said Jos. W. Blount, his assigns or other persons who may be entitled to the moneys due thereon, it shall be lawful for and the duty of the said Jos. W. Blount to advertise," etc.
Jane Marriner died 18 May, 1890, and the land was sold at public auction to the highest bidder under the terms of the mortgage on 9 January, 1893. It was purchased by W. H. Fitchett for $321, who in turn, on the same day and at the same price, deeded it to L. C. Marriner. Jos. W. Blount had the right to sell under his mortgage. The one-third of the principal of the debt was due 1 January, 1891, and one-third 1 January, 1892. Two payments of principal were past due.
"Where a note is payable three years after date, but the interest is payable semiannually, and a mortgage, given to secure the note, subjects the land to sale upon default of payment of principal or interest, or any part of either at maturity, and the debtor fails to pay interest when due, according to the conditions of the mortgage both principal and interest become due, and the creditor is entitled to foreclosure." Gore v. Davis,124 N.C. 234. See, also, Eubanks v. Becton, 158 N.C. 233.
The question of grossly inadequate price, the deflated times and the testimony of P. L. Rea were questions of fact, not for us to determine, but the jury, on the issue. But the plaintiffs contend: "This instruction should also, it is submitted, have been given for another reason. Under the language of this issue plaintiffs were entitled to a favorable answer if Marriner either caused or procured said sale to be made. And while the word `procure' may imply an active solicitation or responsibility, the word `cause,' it is submitted, has a broader meaning and signifies not only procurement by Marriner, but also any neglect or default on his part inducing the making of said sale."
We do not understand that our authorities go as far as the contention made by plaintiff. On the death of Jane Marriner, her husband, L. C. Marriner, having had children by her, became tenant by the curtesy, and entitled to a life estate in the land. L. C. Marriner lived on the land. *Page 455 
 Chief Justice Ruffin, in Jones v. Sherrard, 22 N.C. 187, says: "In the first place, it is to be observed that the terre-tenant of land, liable to encumbrance, must take care that such encumbrance does not accumulate to the injury of those who are to come after him. But then, in doing this, he is not bound to give anything for the relief of the land but what is derived from the land. Therefore one who is liable in respect of the occupation of land cannot be called on for more than the rents or actual annual value of the premises during his time. To that extent it is clear a tenant for life must keep down the interest on encumbrances (italics ours), and the reversioner may file a bill to make the rents amenable, and a receiver will be put upon the tenant for that purpose."
2. Story's Equity Jurisprudence (14 ed.), sec. 658, in part, is as follows:
"Duty of Life Tenant to Pay Interest on Mortgage Debt. — In regard to the interest due upon mortgages and other encumbrances the question often arises, by whom and in what manner it is to be paid. And here the general rule is that a tenant for life of an equity of redemption is bound to keep down and pay the interest, although he is under no obligation to pay off the principal."
Admitting that Marriner had to pay the interest, two defaults of the principal had occurred — the first and second payments of January, 1891 and 1892. These defaults of payments, by clear intent and language, gave the power of sale on 1 January, 1891, on failure to pay principal and interest or either, and like power on 1 January, 1892 and 1893. Although the sale took place on 9 January, 1893, it was legally sold under default for nonpayment of principal on 1 January, 1891 and 1892.
The issue itself was "cause or procure." The words are those frequently in common use, their meaning well understood. We do not think that in law the fact that the life tenant did not pay the principal, it could be imputed to him that he "caused" the land to be sold under our decisions.
The court below used language as strong as plaintiffs were entitled to — "actively besought and requested Jos. W. Blount to advertise and sell this property under the mortgage." The contentions on each side were given by the court, and it was a question for the jury.
Assignments of error 2, 6 and 7 relate to the sixth issue, as follows:
"Did said Marriner acquire said lands from Fitchett in fraud of the rights of the plaintiffs, as alleged in the complaint?" Upon this issue plaintiffs requested the court to charge the jury as follows: "If you believe the evidence and find the facts to be as testified, you will answer *Page 456 
the sixth issue `Yes.'" And the court's refusal to give this instruction constitutes plaintiffs' second assignment of error.
We think there was sufficient evidence on this issue to be submitted to the jury.
The sixth and seventh assignments of error are to the charge on the sixth issue. We give the contention and charge in full:
"The plaintiffs contend you should find as a fact from this evidence that Marriner did acquire this land through Mr. Fitchett, and that he acquired it at a price grossly inadequate when compared to the real value of the property; that you should find at the time he sold, these plaintiffs as heirs at law of Jane Marriner were the owners in fee simple of this land, subject first to the Blount mortgage, and second to the life estate of L. C. Marriner, and that the fact of this sale and of the acquisition by Marriner of the title to the land through Fitchett was to deprive these plaintiffs of this property and put it in L. C. Marriner. Plaintiffs say if you find that was the effect of what you find that Mr. Marriner did, to take this property from those who owned it after his death and put the title in him, and that he did this for that purpose, taking advantage of his relationship as father of these plaintiffs, taking advantage of the fact that they were then minors, being fourteen and seven years of age, respectively, taking into consideration the fact that he acquired it for just the amount of the mortgage debt, one-tenth of the real value, as plaintiffs contend, that that ought to satisfy you that Marriner acquired this property with a fraudulent purpose, and that the effect of his conduct was to commit a fraud on the rights of the plaintiffs, and that therefore you should answer the issue `Yes.' Defendant, on the other hand, contends that you should find that at the time of this conveyance Mr. Marriner and his wife, Mrs. Jane Marriner, were living together with two or more children, it being some evidence that the other children have since died without issue. That for some purpose, which on account of the lapse of time the defendants are unable to show, when Mr. Marriner bought this property he had deed made to his wife; that the deed was made in January, 1890, and not recorded until 10 March, 1890; that you should find that at the time this deed was executed and about the time it was being put on record a house was being built on the land, a large house being built for the use to which it was afterwards put, that is, a public hotel; that you should find that within a short time after this deed was put on record, to wit, in May after March, when it was recorded, Mrs. Jane Marriner died; that you should find that she left Mr. Marriner with two young children to support, and that you should find that Mrs. Marriner had never paid anything for this property, but that in order to carry out some understanding or some arrangement which *Page 457 
Mr. Marriner had, the property was conveyed to her; that subsequently when the mortgage which had been given to secure the purchase price, as defendants contend, became due, in order to be able to handle this property advantageously to himself and to his family, Mr. Marriner bought this property in from Mr. Fitchett and had the deed made to himself. The defendants contend that when you find, as they insist that you should find, that Mrs. Marriner, the mother of the plaintiffs, had never paid anything for this property, as they contend that you should find, that it was no fraud upon her or her heirs for her husband to purchase this property in this manner; that this evidence shows that he did purchase it, and that therefore you should answer this issue `No.' The defendants contend that although you may find that by reason of his changed relationship in life many, many years after these transactions he devised this property to the defendants, that that is no evidence that at the time he acquired the title through Fitchett that he did so in fraud of the plaintiffs; that you should find that subsequent to this transaction, after his wife had died and these two ladies grew up and married, that Mr. Marriner himself married a second time and then the third time, and that three children were born to him of his third marriage; that then, realizing that the children by his first wife were given twenty acres of land which had been deeded to her, and realizing his obligations to his wife, who is now his widow, and his minor children, that he devised his hotel property to her, and that that is no evidence that he had a fraudulent purpose at the time. So defendants say that you should answer that issue `No.'" The jury answered the sixth issue "No."
We see no error in this charge. It was a question of fact whether L. C. Marriner acquired the land through fraud. The jury answered "No." It was not a matter of law to be decided by the court.
It seems to be settled that ordinarily a life tenant must pay the taxes and the interest on a mortgage indebtedness, to the extent, at least, of the income which he receives from the property, but he is not bound to pay the principal of the mortgage. Being bound to pay the taxes and interest, he cannot acquire a tax title or good title based on his failing to pay taxes or interest. He is a trustee to this extent. If a sale is made by a person who holds a mortgage to pay the principal of the mortgage, and the life tenant purchases it, it is a question of good faith and whether the life tenant fraudulently caused, procured or took advantage of the sale to the prejudice of the rights of the remaindermen. The decisions are in contrariety, but we think the position here taken consonant with justice and fair dealing. In the instant case this was an issue of fact for the jury, and not a question of law.
The fourth issue is: "Did W. H. Fitchett bid in said property, at *Page 458 
a sale under said mortgage, for and on behalf of L. C. Marriner, the life tenant, and take a deed therefor, as alleged in the complaint?"
The third assignment of error is the refusal to charge as requested on the fourth issue. The court below gave the contentions on this issue and charged as follows: "I instruct you, gentlemen of the jury, that unless you find by the greater weight of the evidence in this case that prior to the sale, or contemporaneously with the sale, there was an agreement between Fitchett and Marriner by which Fitchett was to bid the property off, not for himself but for Marriner, you would answer this issue `No.' If, however, you find from the evidence, by its greater weight, that there was an agreement between Fitchett and Marriner entered into before the sale or while the sale was going on, that Fitchett would purchase for Marriner, then you would answer this issue `yes,' but if you do not so find then you would answer the issue `No.'"
We think there was no error in the refusal to charge as requested and the charge as given on this issue.
The other exceptions are merely formal and are covered in the positions taken in this opinion.
From the record it appears that, having purchased from Fitchett, L. C. Marriner continued to occupy said property, using and claiming it as his own from said date (9 January, 1893) until his death (3 May, 1921), a period of twenty-eight years. The deed to the property was at once put on the records of the county. His own acts, making improvements and recorded deed, were some evidence of actual notice of the nature of his claim during this period.
One of the plaintiffs, Mrs. Miller, has lived near the property at Edenton ever since her marriage. Although the plaintiffs were but fourteen and seven years of age when their mother died, Mrs. Miller, one of the plaintiffs, was seventeen years old at the time of sale, and Mrs. Travis was ten.
It appears from the testimony that plaintiffs delayed the bringing of this suit, charging their father with fraud:
Until after his death.
Until after the death of Blount, the mortgagee, who sold.
Until after the death of Fitchett, who purchased at mortgage sale and afterwords [afterwards] conveyed to Marriner.
Until after the death of the witnesses by whom the bona fides of the transaction could be proven.
The suit was not brought:
For twenty-eight years and seven months after sale.
For twenty-five years after plaintiff, Mrs. Miller, came of age.
For eighteen years after the other plaintiff, Mrs. Travis, came of age. *Page 459 
To the complaint the defendants interpose a general denial, and also plead the statute of limitations and the equitable plea of laches.
Mrs. Miller testified: "I knew for the first time there was a mortgage made by my mother on this property to Mr. Blount after my father's death."
We do not think it necessary to discuss the statutes of limitation or the equitable plea of laches from the findings of the jury.
As a matter of interest, we may call attention to what was well said byConnor, J., in Sprinkle v. Holton, 146 N.C. 266: "The security of property rights, the peace of families and the public welfare demand that there must be an end of litigation. Courts of equity have always wisely refused to entertain `stale claims.'"
From a careful examination of the entire case we can find
No error.